WILLIAM McMULLAN v. DICKINSON COMPANY.[1]

January 30, 1895.

No. 9003.

**Contract of Service—Payment by Instalments—Damages—Successive Actions.**

Where, under a contract for personal service, the wages are payable in instalments, and, before the term of service expires, the master dismisses the servant without his fault, and the wages are paid up to the time of dismissal, *held*, the liability of the master to the servant is not an absolute liability for wages for constructive service during the balance of the term, but a contingent liability of indemnity for loss of wages. This liability accrues by instalments on successive contingencies, each of which consists in the failure of the servant without his fault to earn, during an instalment period, the amount of wages which he would have earned had the contract been performed, and the deficiency is the measure of damages. The original breach is not total, but the failure to pay the successive instalments constitutes successive breaches, and successive actions may be maintained for the recovery of the instalments of damages as they accrue, if any.

**Same—Constructive Service.**

This is the rule of damages usually allowed under the fiction of constructive service, but that fiction is rejected as false and inconsistent with that rule, while the rule itself is retained.

[1] Reported in 62 N. W. 120.

**Prospective Damages.**

> It does not follow, because of this, that the discharged servant cannot, if he so elect, consider the breach total, bring an action for all his damages, and recover all accruing up to the time of the trial; but it is *held* that prospective damages beyond the time of trial are too contingent and uncertain to be allowed.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., sustaining a demurrer to the second defense set up in the answer. Affirmed.

*H. J. Horn,* and *Penney, Welch & Hayne,* for appellant.

*Wm. H. Donahue* and *S. Meyers,* for respondent.

CANTY, J. On February 25, 1892, the plaintiff entered into a written agreement with the defendant corporation, whereby it agreed to employ him as its assistant manager, from and after that date, as long as he should own in his own name 50 shares of the capital stock of said corporation, fully paid up, and the business of said corporation should be continued, not exceeding the term of the existence of said corporation, and pay him for such services the sum of $1,500 per annum, payable monthly during that time, and whereby he agreed to perform said services during that time. He has ever since owned, as provided, the 50 shares of said stock, and performed said services ever since that time until October 28, 1893, when he was discharged and dismissed by the defendant without cause. He alleges these facts in his complaint in this action, and also alleges that he has been ever since he was so dismissed, and is now, ready and willing to perform said services as so agreed upon, and that there is now due him the sum of $125 for each of the months of March and April, 1894, and prays judgment for the sum of $250. The defendant in its answer, for a second defense, alleges that on March 2, 1894, plaintiff commenced a similar action to this for the recovery of the sum of $512, for the period of time from his said discharge to March 1, 1894, alleging the same facts and the same breach, and that on April 16, 1894, he recovered judgment in that action against this defendant for that sum and costs, and this is pleaded in bar of the present action. The plaintiff demurred to this defense, and from an order sustaining the demurrer the defendant appeals.

The plaintiff brought each action for instalments of wages claimed to be due, on the theory of constructive service.    The doctrine of constructive service was first laid down by Lord Ellenborough in Gandell v. Pontigny, 4 Camp. 375, and this case was followed in England and this country for a long time (Wood, Mast. & Serv. [2d Ed.] 254), and is still upheld by several courts (Isaacs v. Davies, 68 Ga. 169; Armfield v. Nash, 31 Miss. 361; Strauss v. Meertief, 64 Ala. 299). It has been repudiated by the courts of England (Goodman v. Pocock, 15 Q. B. 576; Wood, Mast. & Serv. [2d Ed.] 254), and by many of the courts in this country (Id.; and notes to Decamp v. Hewitt, 43 Am. Dec. 204), as unsound and inconsistent with itself, as it assumes that the discharged servant has since his discharge remained ready, willing, and able to perform the services for which he was hired, while sound principles require him to seek employment elsewhere, and thereby mitigate the damages caused by his discharge.    His remedy is for damages for breach of the contract, and not for wages for its performance.    But the courts, which deny his right to recover wages as for constructive service, have denied him any remedy except one for damages, which, if seemingly more logical in theory, is most absurd in its practical results.    These courts give him no remedy except the one which is given for the recovery of loss of profits for the breach of other contracts, and hold that the contract is entire, even though the wages are payable in instalments, and that he exhausts his remedy by an action for a part of such damages, no matter how long the contract would have run if it had not been broken.    See James v. Allen Co., 44 Ohio St. 226, 6 N. E. 246; Moody v. Leverich, 4 Daly, 401; Colburn v. Woodworth, 31 Barb. 381; Booge v. Pacific R. R., 33 Mo. 212.

No one action to recover all the damages for such a breach of such a contract can furnish any adequate remedy, or do anything like substantial justice between the parties.    By its charter the life of this corporation is thirty years.    If the action is commenced immediately after the breach, how can prospective damages be assessed for this thirty years, or for even one year?    To presume that the discharged servant will not be able for a large part of that time to obtain other employment, and award him large damages, might be grossly unjust to the defendant. Again, the servant is entitled to actual indemnity, not to such speculative indemnity as must necessarily be given by award-

ing him prospective damages. His contract was not a speculative one, and the law should not make it such. That men can and do find employment is the general rule, and enforced idleness the exception. It should not be presumed in advance that the exceptional will occur. This is not in conflict with the rule that, in an action for retrospective damages for such a breach, the burden is on the defendant to show that the discharged servant could have found employment. In that case, as in others, reasonable diligence will be presumed. When it appears that he has not found employment or been employed, there is no presumption that it was his fault, and, under such circumstances, it will be presumed that the exceptional has happened. But to presume that the exceptional will happen is very different. In an action for such a breach of a contract for services, prospective damages beyond the day of trial are too contingent and uncertain, and cannot be assessed. 2 Suth. Dam. 472; Gordon v. Brewster, 7 Wis. 355; Fowler v. Armour, 24 Ala. 194; Wright v. Falkner, 37 Ala. 274; Colburn v. Woodworth, 31 Barb. 381.

Then, if the discharged servant can have but one action, it is necessary for him to starve and wait as long as possible before commencing it. If he waits longer than six years after the breach, the statute of limitations will have run, and he will lose his whole claim. If he brings his action within the six years, he will lose his claim for the balance of the time after the day of trial. Under this rule, the measure of damages for the breach of a 30-year contract is no greater than for the breach of a 6 or 7 year contract. Such a remedy is a travesty on justice. Although the servant has stipulated for a weekly, monthly, or quarterly income, it assumes that he can live for years without any income, after which time he will cease to live or need income. The fallacy lies in assuming that, on the breach of the contract, loss of wages is analogous to loss of profits, and that the same rule of damages applies, while in fact the cases are wholly dissimilar, and there is scarcely a parallel between them. In the one case the liability is absolute; in the other it is contingent. If the rule of damages were the same, then, in the case of the breach of the contract for service, the discharged servant should be allowed only the amount which the stipulated wages exceed the market value of the service to be performed, without regard to whether he could obtain other employment or

not.   If the stipulated wages did not exceed the market value of the service, he would be entitled to only nominal damages; and in no case could his failure to find other employment vary the measure of damages.   Clearly, this is not the rule.   In the one case the liability is a contingent liability for loss of wages; in the other case it is an absolute liability for loss of profits.   Such contingent liability cannot be ascertained in advance of the happening of the contingency, and that is why prospective damages for loss of wages are too contingent and are too speculative and uncertain to be allowed, while retrospective damages for such loss are of the most certain character. On the other hand, if damages for loss of profits are too speculative and uncertain to be allowed, they are equally so, whether prospective or retrospective.   "The pecuniary advantages which would have been realized but for the defendant's act must be ascertained without the aid which their actual existence would afford.   The plaintiff's right to recover for such a loss depends on his proving with sufficient certainty that such advantages would have resulted, and, therefore, that the act complained of prevented them."   1 Suth. Dam. 107.

It is our opinion that the servant wrongfully discharged is entitled to indemnity for loss of wages, and for the full measure of this indemnity the master is clearly liable.   This liability accrues by instalments on successive contingencies.   Each contingency consists in the failure of the servant without his fault to earn, during the instalment period named in the contract, the amount of wages which he would have earned if the contract had been performed, and the master is liable for the deficiency.   This rule of damages is not consistent with the doctrine of constructive service, but it is the rule which has usually been applied by the courts which adopted that doctrine.   Under that doctrine the master should be held liable to the discharged servant for wages as if earned, while in fact he is held only for indemnity for loss of wages.   The fiction of constructive service is false and illogical, but the measure of damages given under that fiction is correct and logical.   It is simply a case of a wrong reason given for a correct rule.   Instead of rejecting the false reason and retaining the correct rule, many courts have rejected both the rule and the reason.   In our opinion, this rule of damages should be retained; but the true ground on which it is based is not that of constructive service, but the liability of the

master to indemnify the discharged servant, not to pay him wages, and this indemnity accrues by instalments. The original breach is not total, but the failure to pay the successive instalments constitutes successive breaches. Since the days of Lord Ellenborough this class of cases has been in some courts an exception to the rule that there can be but one action for damages for the breach of a contract, and there are strong reasons why it should be an exception.

Because the discharged servant may, if he so elects, bring successive actions for the instalments of indemnity as they accrue, it does not follow that he cannot elect to consider the breach total, and bring one action for all his damages, and recover all of the same accruing up to the time of trial. Fowler v. Armour, 24 Ala. 194; Strauss v. Meertief, 64 Ala. 299. But the wrongdoer can have no such election. He should not be allowed to take advantage of his own wrong, and, for the purpose of preventing the use of any adequate remedy and defeating any adequate recovery, to insist that his own breach is total.

The order appealed from should be affirmed. So ordered.