## WILLIAM McMULLAN v. DICKINSON COMPANY.[1]

January 14, 1896.[2]

Nos. 9684—(190).

| 63 | 405 |
|----|-----|
| 83 | 350 |

### Contract of Employment—Duration—Mutuality.

Plaintiff and defendant, a corporation, entered into an agreement by the terms of which the latter employed the former as assistant manager upon a stated yearly salary, payable in monthly instalments, said employment to continue so long as the business of the corporation should be continued, provided plaintiff properly and efficiently discharged his duties, and only so long as he should own and hold in his own name 50 shares of capital stock, fully paid up, in defendant corporation. *Held*, that the period of employment was for such time as plaintiff continued to own and hold the stock shares, not exceeding the period during which the corporate business was being transacted, and was fixed with sufficient definiteness; and, further, that there was no lack of mutuality of consideration.

### Pledge of Stock—Ownership.

A pledgee of stock shares does not become a stockholder in a corporation, as between himself, the pledgor, and the corporation, by simply receiving the shares as collateral security; nor does the pledgor part with his ownership of the shares, nor is he divested of his rights as a stockholder, by merely pledging them as security for the payment of his debt.

### Action for Wrongful Discharge.

In an action to recover damages for wrongful discharge it is not incumbent upon the servant to allege or prove an offer to perform. All that is required in this respect is to aver and show a readiness and willingness to render the services, and an honest effort to obtain other employment.

---

[1] Reported in 65 N. W. 661, 663.

[2] The same day the following opinion was filed in a case between the same parties in an appeal—Nos. 9683–(189)—from an order of the district court for Hennepin county, Smith, J., overruling a demurrer to the complaint. Affirmed.

*Welch & Hayne*, for appellant.

*Wm. H. Donahue* and *S. Meyers*, for respondent.

PER CURIAM. In disposing of an appeal from an order denying defendant's motion for a new trial in another case between these parties (see principal opinion) we have considered and passed upon all of the questions herein involved.

Order affirmed.

Appeal by defendant from an order of the district court for Hennepin county, Belden, J., denying a motion for a new trial, after a verdict of $235.40 in favor of plaintiff. Affirmed.

*Welch & Hayne* and *P. M. Babcock*, for appellant.
*Wm. H. Donahue* and *S. Meyers*, for respondent.

COLLINS, J. After the determination of the questions involved in a former appeal in this cause (60 Minn. 156, 62 N. W. 120) it was brought to trial upon the merits, and a verdict had for plaintiff. The present appeal is from an order denying defendant's motion for a new trial.

Because of the nature of the questions raised at this time it is advisable to set out the writing signed by the parties, and which is made the basis of plaintiff's cause of action. It is as follows:

"This agreement, made this 25th day of February, A. D. 1892, between the Dickinson Company, a corporation existing under the General Laws of the State of Minnesota, party of the first part, and William McMullan, party of the second part, witnesseth:

"Whereas, a resolution of the Board of Directors of the said party of the first part was adopted at a meeting thereof on the 25th day of February, 1892, as follows, to wit: 'Resolved, that this corporation will employ William McMullan, of Minneapolis, Minnesota, as assistant manager of what is known as the Minneapolis store of said corporation, being the same formerly occupied and conducted in said Minneapolis by Dickinson and Cunnington, to assist in the management of said Minneapolis store, subject to the by-laws and regulations prescribed by the directors, at a salary of $1,500 per annum, beginning the twenty-fifth day of February, A. D. 1892, and payable monthly in equal amounts. Said McMullan shall give his personal services and his time faithfully and properly at said store and in said business, but shall be entitled to a vacation of one month during the summer of each year. Said employment is to continue during the time the business of said corporation shall be continued, not exceeding the term and existence of said corporation.

"'Provided, that the said McMullan shall discharge the duties of Assistant Manager properly and efficiently, and that his said employment shall continue as aforesaid only so long as he shall own and hold in his own name 50 shares of the capital stock, fully paid

up, in said corporation. The president of said corporation is hereby authorized and directed to make and execute, on the part of said corporation, a suitable contract in writing with said McMullan upon the terms and in accordance with this resolution.'

"And the said party of the second part has accepted the said employment, and the terms thereof, as in said resolution set forth.

"Now, it is hereby agreed between the said parties that the said party of the first part will and does employ the said party of the second part to perform the services as in said resolution required, and according to the terms thereof, and at the salary therein mentioned, to continue and be payable according to the conditions in said resolution provided. And the party of the second part agrees to perform the said services in manner as aforesaid, and subject to the conditions and terms hereinbefore mentioned and prescribed in said resolution.

"In witness whereof, this agreement has been executed on the part of the party of the first part, by its president subscribing his name hereto, and attaching the corporate seal thereof, and by the party of the second part hereto setting his hand and seal the day and year first above written.

"The Dickinson Company:
"S. G. Dickinson, Pres. [Seal.]
"William McMullan. [Seal.]
"[The Dickinson Company Corporate Seal, St. Paul, Minn.]"

For the purposes of this decision we assume that none of the questions to be considered are res judicata because of a former action tried on its merits and referred to in the opinion just mentioned. This brings us directly to the main questions in the case.

1. From the resolution which was incorporated bodily into the instrument executed by both parties as their contract it appears that it was resolved to employ plaintiff as an assistant manager of the corporate business at a fixed salary per year, payable in monthly instalments. The term of employment was determined upon as the period of time during which the corporate business might be carried on; not to exceed, of course, the life of the corporation as fixed by law. Two provisos were appended to the paragraph relating to the term of employment,—one that plaintiff should properly and

efficiently discharge his duties as such assistant; the other, that his term of employment should continue only so long as he owned and held, in his own name, 50 shares, fully paid up, of the defendant's capital stock. A recital that plaintiff had accepted the employment followed, and then the agreement whereby defendant employed plaintiff and the latter entered into the employment, each party being subject to the terms and conditions mentioned and prescribed by the resolution.

Counsel for defendant urges several objections to the validity of the contract, but they are all disposed of by considering the claim that it is and was void for lack of mutuality of consideration, the point being that, while the character of the services to be rendered and the compensation were fixed, no definite period of time was agreed upon during which the plaintiff should work or defendant employ and pay. The language used, independent of the provisos, was: "Said employment is to continue during the time the business of said corporation shall be continued, not exceeding the term and existence of the corporation." The only conditions mentioned and imposed being that, while in defendant's employ, the plaintiff should render proper and efficient service, and should own and hold in his own name certain shares of corporate stock.

As we construe the expressions used, the duration of the term of employment was sufficiently defined, for the law does not require that the precise number of days or months or years shall be stated; and there was mutuality of consideration. The term fixed, dependent only upon the condition as to plaintiff's ownership of the stock shares, was for such period of time as defendant corporation might continue to transact business. It might cease to do business voluntarily, or there might be an involuntary termination of its business transactions; for instance by proceedings in insolvency instituted by its creditors, or the business might terminate by operation of law at the end of not to exceed 30 years from the date of its organization,—that being the life term of corporations of this character under the statutes. The defendant agreed to keep plaintiff in its employ so long as he retained as the owner, and held in his own name, the shares, and it continued in business; and plaintiff, in consideration of defendant's agreement, stipulated that, so long as he remained in such employment, he would own and hold the stock,

and would perform proper and efficient service. The requirement that plaintiff should own and continue to hold the stock as a condition to his retention by defendant was, presumptively, for the benefit of the latter, and a detriment to the former. It was in defendant's interest to have its stock shares permanently held by its employés, for such holding would serve to stimulate them in the performance of their duties. It was an injury to plaintiff to hold the stock as a condition for his employment, especially when we consider that the business of the concern could be closed out at any time, leaving him out of employment, with the stock upon his hands. Had the plaintiff disposed of his shares, the defendant would have suffered a loss; and, had the latter ceased business, the former would have been injured. Had the relation of employer and employé terminated between these parties through the happening of either of these two contingencies, neither party would have been in statu quo. The consideration for the agreement was ample and mutual, although the term of service might be terminated by defendant's cessation of business or plaintiff's selling his stock in the corporation. See Bolles v. Sachs, 37 Minn. 315, 33 N. W. 862. The expressions of a contingency whereby the contract might be terminated by the act of either party expressly excluded the idea that each was at liberty to terminate it at any time without regard to the happening of either contingency.

2. Although wrongfully discharged, the plaintiff owed to defendant the duty of seeking other employment, and this duty, according to the evidence, he seems to have recognized. It was not necessary that he should present himself to defendant, and offer to perform the services contracted for. If he was ready and willing to render the services, nothing more was required, except an honest effort to obtain other employment. Mackubin v. Clarkson, 5 Minn. 193 (247); Horn v. Western Land Assn., 22 Minn. 233. We do not regard it as necessary to further consider the second assignment of error.

3. Prior to plaintiff's discharge by defendant he had pledged his stock shares by assignment in blank and delivery to two or more banks as collateral security for the payment of his own personal obligations. It is contended that this was a violation of plaintiff's agreement to own and hold such shares in his own name, and at once

absolved and released defendant from its obligation to keep plaintiff in its employ. A fair construction of this provision is that plaintiff was to remain in defendant's service so long as he continued to be a stockholder in the concern, and that when he ceased to be a stockholder his services were to be dispensed with. This was the intent of the parties, unquestionably.

That the plaintiff did not cease to be a stockholder by simply pledging his shares is apparent. If there had been a transfer of the stock upon the books of the corporation in the form prescribed by the directors (G. S. 1894, § 2799), or if in any other manner the pledgees had become stockholders, it was incumbent upon defendant to establish the fact by competent evidence. The banks did not become stockholders in defendant corporation by simply receiving the stock shares as collateral security, nor did plaintiff part with the ownership of these shares, nor was he divested of his rights as a stockholder, by merely pledging them for the payment of a debt. A large number of cases pertaining to the transfer of stock shares and the rights and relations of pledgor and pledgee are cited at length in Re Argus Printing Co., 1 N. D. 434, 48 N. W. 347. See, also, Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577; Joslyn v. St. Paul Distilling Co., 44 Minn. 183, 46 N. W. 337; Basting v. Northern Trust Co., 61 Minn. 307, 63 N. W. 721.

We have covered all of the points made by counsel which need special mention.

Order affirmed.