## HINCHMAN *v.* MATHESON MOTOR CAR CO.

1. CONTRACTS — CONSTRUCTION — SEVERABLE PROVISIONS — CONTRACT OF EMPLOYMENT.

   A contract by which plaintiff undertakes to sell an approximate amount of the capital stock of defendant corporation and to become its treasurer for one year at a stipulated salary, is severable with respect to the two provisions, and his right to continue for the contract term as treasurer is not dependent upon his selling the amount of stock stipulated.

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—TERMINATION—CAUSE—BURDEN OF PROOF.

   In assumpsit by the treasurer of a corporation on a contract of employment for a definite period the burden is upon defend-to show sufficient cause for plaintiff's discharge.

3. SAME—CONTRACT—FALSE REPRESENTATIONS.

> In assumpsit by the treasurer of a corporation on a contract of employment for a definite period, the contract also providing that plaintiff should undertake to sell a certain amount of stock and to buy a certain amount himself, which latter agreement he had performed, defendant could not show as a reason for plaintiff's discharge that he made false representations as to his ability to sell stock, where it had not rescinded the contract nor made any offer to place plaintiff in statu quo by tendering him the money received for the stock he had purchased.

4. CONTRACTS—RESCISSION—FRAUD — RESTORATION OF CONSIDERATION—NECESSITY.

> When one rescinds a contract on the ground of fraud it is his duty to restore to the other the property he has received.

5. FRAUD—PLEADING—NECESSITY.

> In assumpsit on a contract of employment defendant cannot show plaintiff's false representations inducing the making of the contract without a notice of special defense on the ground of fraud.

6. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT — TERMINATION.

> A letter from a corporation to its treasurer, with whom it has a term contract of employment, advising him of pending negotiations, the success of which will mean the termination of his service contract, and asking him for an "expression concerning same," and an answer to the effect that the treasurer will be pleased to resign as soon as he is relieved of liability on indorsements and is repaid the amount of his investment made as a consideration of the contract, to which no reply was made, do not indicate a discharge of the treasurer.

7. SAME—ACTION—FORM—ASSUMPSIT.

> Assumpsit upon the contract, with a special count setting up the contract and the facts relative to the services performed, the discharge, plaintiff's readiness to continue in the performance of his duties, and the failure to pay, is proper to recover on a contract of employment wrongfully terminated by the employer before the expiration of the contract period.

Error to Wayne; Murphy, J.   Submitted January 13, 1908.   (Docket No. 175.)   Decided February 15, 1908.

Assumpsit by F. Archer Hinchman against the Mathe-

son Motor Car Company on a contract of employment. There was judgment for plaintiff, and defendant brings error.    Affirmed.

*Hal H. Smith*, for appellant.

*Bowen, Douglas, Whiting & Murfin*, for appellee.

The defendant, a Michigan corporation, in 1904 had its manufacturing plant at Holyoke, Mass. It desired to remove it to Detroit, Mich. Negotiations were entered into between the defendant through its manager, Mr. Matheson, and plaintiff who was a resident of Detroit. These negotiations resulted in a contract evidenced by a letter from the plaintiff to the defendant and accepted by it. Plaintiff's letter is dated December 6, 1904, and reads as follows:

"DETROIT, MICH., Dec. 6, 1904.
"MATHESON MOTOR CAR CO., Ltd.,
                    "Grand Rapids, Mich.
    "*Gentlemen:* I will undertake to dispose of approximately $100,000 of the preferred stock of the Matheson Motor Car Co., Ltd., each share of preferred stock to carry with it half a share of common stock as a bonus, and to look after the finances of the company on the following basis:
    "I am to be elected treasurer of the company, and to perform the duties of that office for which my compensation will be $250 per month until the plant may be in operation in Detroit, after which time, my salary to be increased to such an amount as may be considered equitable by the board of directors.
    "For the placing of the above mentioned preferred stock, I am to receive five per cent. commission on all preferred stock sold by me, which commission is to be credited to my subscription account.
    "I will also subscribe for $5,000 preferred stock, to carry with it $2,500 in common stock. Of this amount, $2,500 is to be paid by me in cash and the balance to be paid for by my commissions as above outlined.
    "It is also understood that any additional commissions above the $2,500 mentioned is to be paid me in preferred stock with half a share of common stock on the same basis as above.

"When elected as director I agree to indorse paper with all the balance of the board of directors as such indorsements may be necessary, it being understood that all the foregoing be dependent on an inspection of the company's plant and books at Holyoke, the expenses of the trip to Holyoke for such investigation to be borne by your company.

"It is also understood that this agreement contemplates my service with the company for the year of 1905 and indefinitely thereafter so long as mutually satisfactory.

"If this proposition may be satisfactory to your company, I will arrange to run down to Holyoke the latter part of this week for the inspection above referred to.

"Yours truly,

"F. A. Hinchman."

It was accepted in writing indorsed on the letter on December 7, 1904. Plaintiff immediately went to Holyoke, and, after an examination on December 10th, wrote underneath the above letter an acceptance:

"I hereby accept the above, having found the conditions at Holyoke satisfactory."

Plaintiff was elected director and treasurer and entered upon the discharge of his duties as treasurer and endeavored to obtain subscriptions to the stock as mentioned in the contract, but failed. In all other respects he fully performed the contract, having subscribed for the stock and paid $2,500 into the treasury of the company, and also indorsed paper for the company to the extent of about $30,000. He continued to act as treasurer until he was discharged the latter part of October, 1905. His salary was paid to July 1, 1905. Plaintiff, after the expiration of the year provided in the contract, brought this suit to recover the contract price of his services. With its plea of the general issue defendant gave notice that plaintiff had failed to perform his agreement to dispose of said stock, and that for that reason defendant rescinded the contract. It is undisputed that he continued to act as treasurer through July, August, and September, and nearly through October, and as to these months the court

directed a verdict for the plaintiff. As to the months of November and December, the court instructed the jury that they must be able to find that the plaintiff was ready and willing to perform his duties as treasurer and was also competent, and that after his discharge it was his duty to use reasonable diligence to obtain other employment for which he would be adapted. The court also instructed the jury that the burden of proof was upon the defendant to show good cause for discharging the plaintiff from its employ.

Two questions were left to the jury, namely,—(1) Did the defendant have good reason to discharge the plaintiff? and (2) If it had no right to discharge him, did the plaintiff use reasonable efforts to obtain other employment and thereby diminish his damages?

GRANT, C. J. (*after stating the facts*). The most important question arises upon the construction of the contract. The learned counsel for the defendant insists that the clause "I will undertake to dispose of approximately $100,000 of the preferred stock," is an absolute agreement; that he failed to perform it, and therefore cannot recover for his services as treasurer. We think counsel in error. Plaintiff agreed to do two things, neither of which was dependent upon the performance of the other. He agreed to act as treasurer for one year for which he was to receive a monthly compensation. He also was to undertake to dispose of a certain amount of the stock. The disposal of the stock was certainly not a condition precedent to his appointment as treasurer and director and the performance of the duties which those two offices imposed upon him; otherwise the defendant would not have paid plaintiff monthly for six months. Furthermore, the correspondence between the parties clearly shows that plaintiff's employment as treasurer was not understood to be dependent upon his disposal of the stock. *Seymour* v. *Rolling Mills*, 56 Mich. 117,

controls this feature of the case.  In that case this court said:

"The agreement consists of two contracts, severable and independent of each other, and have so been treated by the parties."

It therefore becomes unnecessary to determine whether the word "undertake" imported an absolute agreement to sell, or simply a faithful endeavor on his part to sell. That plaintiff made faithful endeavors to sell the stock is established by the evidence.  In these endeavors he was assisted by the manager of the defendant; but notwithstanding the efforts of both, no stock could be disposed of in the city of Detroit.

The contract was one of employment for a year as treasurer at a stated compensation, and plaintiff was subject to discharge only for cause.  On November 1st another treasurer was appointed, and plaintiff notified that his successor had been elected.  Mr. Matheson, the manager of the defendant, testified that technically plaintiff was the defendant's treasurer as late as October.  In fact he was the only treasurer defendant had and performed all the duties required of him.

2. The court correctly instructed the jury that the burden of proof rested upon the defendant to show sufficient cause for plaintiff's discharge from its employment.  *Milligan* v. *Furniture Co.*, 111 Mich. 629; *Bolt* v. *Friederick*, 56 Mich. 20.

3. Defendant also insists that it should have been permitted to introduce evidence of false representations made by the plaintiff as to his ability to dispose of this stock, and as showing a reason for his discharge.  It could not make that defense without a rescission of the contract. Defendant made no offer to show that it had placed the plaintiff in statu quo by tendering to him the money received for the stock he had purchased.  When one rescinds a contract on the ground of fraud it is his duty to restore to the other party the property he has received.

3 Current Law, p. 844; 9 Cyc. p. 433.   There was therefore no rescission.   Furthermore, defendant gave no notice of a defense on the ground of fraud.   This evidence was therefore properly excluded.

4. It is also urged that there was some evidence of a discharge of the plaintiff in July, which should have been submitted to the jury.   The main ground for this contention is found in a letter written to plaintiff by defendant on June 30, 1905, in which defendant's manager, Mr. Matheson, refers to negotiations to secure capital stock in the East which would result in the retention of the plant at Holyoke.   The letter further stated that that would involve the reorganization under Massachusetts law and the transfer of the Michigan company to a Massachusetts corporation; that if the negotiation went through it would enable the company to retire its outstanding bank line and relieve plaintiff as well as the rest of the board from other indorsements.   The letter then stated that in that event plaintiff's services would be no longer required, and would mean the termination of his "service contract," and asked an "expression concerning same" from him.   To this plaintiff replied asking further information and promising to answer as soon as he was able to give the matter a little consideration.   On July 8th plaintiff wrote defendant evidently in reply to Mr. Matheson's letter of the 30th:

"I will be pleased to send you my resignation when the loans at The American Exchange National Bank at Detroit have been fully paid up, so as to relieve me of my indorsements, and upon receipt of the amount of my investment, viz., $2,500 in the stock of the Matheson Motor Car Company."

This offer was not accepted.   There is nothing in this correspondence to indicate any discharge of the plaintiff as treasurer.   Neither is there anything in the correspondence following until his discharge November 1st.

5. It is also urged that the plaintiff's form of action is not appropriate to recovery after his discharge, the claim

being that he should have brought suit for breach of contract.   The declaration we think is in the usual form for actions of this kind, alleging as it does, that—

"Defendant disregarding its obligation,   *   *   *   neglected and refused to pay the plaintiff's salary, although the plaintiff was at all times prepared and ready to continue to discharge the duties of the office of treasurer to which he had been elected."

The declaration is not for services rendered, but for services he did not render but was ready and willing to perform.   The special count sets forth the contract in full; that the plaintiff entered upon his duties; that he was paid to July 1, 1905; that he was at all times prepared and ready to continue to discharge the duties of the office; and its refusal to pay.   Had plaintiff brought suit simply for work and labor performed, as was the case in *Moore v. Nason*, 48 Mich. 300, plaintiff could not have recovered for the last two months of the contract period.

Judgment affirmed.

BLAIR, MOORE, CARPENTER, and MCALVAY, JJ., concurred.