# CHARLESTON.

## JAMESON v. BOARD OF EDUCATION.

### Submitted March 14, 1916.    Decided June 3, 1916.

1. . MASTER AND SERVANT—*Employment Contract—Breach.*

    A contract between employer and employe for services to be rendered for a period of nine months, for a stipulated salary payable monthly, is an indivisible contract and is broken by the refusal of the employer to permit the employe to perform his part of the contract.    (p. 614).

2. JUDGMENT—*Master and Servant—Res Judicata—Breach of Employment Contract.*

    For such breach plaintiff can bring but one action and he is entitled to recover entire damages therein. He can not elect to treat the contract as still in force and recover on an indebitatus assumpsit count for unearned salary, but can only recover damages for the breach. Judgment in one action, in such case, is a bar to a subsequent suit.    (p. 614).

    (POFFENBARGER AND MILLER, JUDGES, dissenting).

Error to Circuit Court, Marshall County.

Action by Hallie Janes Jameson against the Board of Education, etc. Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*John P. Arbenz,* for plaintiff in error.

*Martin Brown,* for defendant in error..

WILLIAMS, PRESIDENT:

Plaintiff recovered a judgment against defendant for $609.67, the amount of seven months wages, claimed to be due

her on a contract of employment as teacher of music in the public schools of the cities of Benwood and McMechen, in the school district of Union, Marshall county, and by this writ of error defendant seeks a reversal.

Plaintiff declared upon the special contract, averring that she was employed by defendant for a period of nine months, beginning on the 11th of September, 1911, and continuing for nine school months, on an agreed salary of $75 per month, payable monthly; that, throughout the term of employment, she stood ready to perform her part of the contract; that she appeared at the schools on the morning of each school day and demanded of the respective superintendents thereof that her work be assigned her; and that she did actually perform her part of the contract. The declaration contains also the common counts in assumpsit. The only breach averred is the failure and refusal of defendant to pay the wages for the last seven months of the schools.

Defendant pleaded the general issue, and also tendered a special plea, which the court rejected on motion of plaintiff. It averred that plaintiff had theretofore sued defendant and recovered a judgment against it for $150, on account of salary claimed by plaintiff for the first two months of school, ending, respectively, on the 6th of October and the 3rd of November, 1911; that it was proven, on the trial of that action, that defendant had revoked or attempted to revoke plaintiff's appointment as music teacher, and had refused to permit her to teach; and that she had not, in fact, taught, though she held herself in readiness to do so; and that said judgment is still in force. Wherefore, defendant prayed judgment whether plaintiff ought to have or maintain her present action.

The case was tried by the court in lieu of a jury, upon an agreed statement of facts, from which it appears that the plaintiff was not permitted by defendant to teach; that it sued out a writ of injunction to prevent her from continually appearing at the schools for the purpose of teaching, which writ was later dissolved on her motion. It thus appears that plaintiff actually performed no part of the contract, although she was at all times ready to do so, but that she was prevented from performing by defendant.

There was a total breach of the contract by defendant's refusal to permit plaintiff to perform her part of it.   Her right of action for that breach was then complete, and it was not necessary for her to appear at the schools each day and demand opportunity to perform the contract.   She could not thereby make her cause of action any more perfect than it was the moment she was informed that defendant had refused to be bound by the contract.   Her suit is not for damages for a breach of the contract of employment, but is a suit for wages claimed to be due under the contract, for services which were never actually performed.   She seeks to treat the contract as subsisting until the end of the term, and broken only in respect of the promise to pay her the agreed monthly wages. This she can not do.   Having performed no services whatever, she can not recover upon the promise, as if wages were earned. Her only right of action is for a breach of the contract.  It is insisted that she is entitled to recover on account of constructive service, that being always ready and willing to perform the contract she should be regarded in law as having actually performed it.   That doctrine was first announced by Lord Ellenborough in *Gandell* v. *Potigny,* 4 Campbell 375, a nisi prius case decided in 1816, in which he held that a servant, employed for a quarter and wrongfully discharged before the end thereof, might recover upon an indebitatus assumpsit count for wages for the entire quarter.   Although that doctrine was followed in a few later cases, it has, long since, been repudiated as unsound, both in England and in a majority of the states of the Union.   The court of King's Bench, in 1828, held that, ''If the contract between master and servant be the usual one for a year, determinable at a month, the servant, if turned away improperly, cannot recover on a count stating the contract to be for an entire year; and he cannot, on the common count for wages, recover for any further period than that during which he had served.'' *Archard* v. *Hornor,* 3 Car. & P. 349. See also, *Smith* v. *Hayward,* 7 Ad. & E. 544, 112 Eng. Rep. 575; *Goodman* v. *Pocock,* 15 Q. B. 576.   In the case last cited, plaintiff hired for a year, and was wrongfully dismissed in the middle of a quarter.   He brought an action for his wrongful dismissal, the declaration

containing a special count therefor. The jury were instructed not to take into account the services actually rendered during the broken quarter, as they were not recoverable except upon an indebitatus count; and they gave damages accordingly. He then brought a second action to recover on an indebitatus count for services rendered during the broken quarter, and the court held that it could not be maintained. In his opinion at page 580, Lord Campbell says: "He might then have rescinded the contract, and have recovered pro rata on a quantum meruit. But he did not do this; he sued on the special contract, and recovered damages for a breach of it. By this course he treated the contract as subsisting; and he recovered damages on that footing. It is said that he recovered in that action in respect of no services except those of the past quarters. I receive with profound respect the opinion which the illustrious Judge who tried the former action is said to have expressed: but I have a clear opinion, and I must act upon it, that the jury in assessing damages for the wrongful dismissal ought to have taken into the account the plaintiff's salary up to the time of his dismissal. It is said there is now no plea to raise the point. The plea of non assumpsit is quite sufficient: it obliges the plaintiff to shew a debt due; and that could be only by shewing that work was done for which payment could be claimed under the common count." Coleridge, J., in his opinion in the same case, says: "In a case like this the servant may either treat the contract as rescinded and bring indebitatus assumpsit, or he may sue on the contract; but he cannot do both; and, if he has two counts, he must take the verdict on one only. Here the plaintiff elected to sue on the contract; and he cannot now sue in this form." The following English cases are to the same effect: *Elderton* v. *Emmens,* 6 C. B. 160, 136 Eng. Rep. 1213, affirmed in House of Lords, 13 C. B. 495, 138 Eng. Rep. 1292; and *Beckham* v. *Drake,* 2 House of Lords Cases, 579.

The constructive service doctrine was followed for a while by the courts of New York, but was later repudiated. The court of appeals of that state, in *Howard* v. *Daly,* 61 N. Y. 362, 19 L. R. A. 285, expressly disapproves the doctrine of *Gandell* v. *Potigny, supra,* and overrules the earlier New York

decisions. In that case plaintiff was employed to act at the Fifth Avenue Theatre, in such capacity and manner as defendant might direct, and was to be paid a salary of $10 a week during the season, beginning about September 15, 1870, and continuing until about July 1, 1871. There, as in this case, plaintiff was prevented by the defendant from entering upon the discharge of her engagement, and, in fact, never rendered any actual service. The court held that she could not maintain an action for wages, but could sue only for breach of the contract, and that it was not necessary to tender her services after the breach. Respecting the constructive service doctrine, Judge Dwight, at page 373, says: "This doctrine is, however, so opposed to principle, so clearly hostile to the great mass of the authorities, and wholly irreconcilable to that great and beneficent rule of law, that a person discharged from service must not remain idle, but must accept employment elsewhere if offered, that we cannot accept it. If a person discharged from service may recover wages, or treat the contract as still subsisting, then he must remain idle in order to be always ready to perform the service. How absurd it would be that one rule of law should call upon him to accept other employment, while another rule required him to remain idle in order that he may recover full wages. The doctrine of 'constructive service' is not only at war with principle, but with the rules of political economy, as it encourages idleness and gives compensation to men who fold their arms and decline service, equal to those who perform with willing hands their stipulated amount of labor. Though the master has committed a wrong, the servant is not for one moment released from the rule that he should labor; and no rule can be sound which gives him full wages while living in voluntary idleness. For these reasons, if the plaintiff was discharged after the time of service commenced, she had an immediate cause of action for damages, which were *prima facie* a sum equal to the stipulated amount, unless the defendant should give evidence in mitigation of damages."

*Keedy v. Long*, 71 Md. 385, was a case similar to the one we are now considering, except that there plaintiff had been permitted to render some services, whereas, in this case plaintiff

was prevented from rendering any services. Miss Long was employed by Mr. Keedy to teach music in The Hagerstown Female Seminary, of which he was principal, for the period of a year at a salary of $350 for the term, payable in monthly installments. She taught one month and twenty days and was then discharged, having received pay for the first full month. She sued for twenty days salary and recovered judgment therefor which Keedy paid. She later sued for a breach of the contract and recovered a judgment for damages in the lower court. The defendant appealed and secured a reversal, the court holding that the judgment in the first action was a complete bar to the second. Another well considered case by the same court, and directly in point here, is *Olmstead* v. *Bach*, 78 Md. 132. There plaintiff had been employed for a period of a year as cutter in defendant's establishment and was to be paid $50 weekly. He was discharged before the end of the term and all wages due at that time were paid to him, including four days beyond the time when he was discharged. Nine days after his discharge he brought an action before a justice of the peace and recovered judgment for $50, which was satisfied. He thereafter brought another action, in the city court of Baltimore, for wages claimed to have become due after the first action. Defendant pleaded the judgment recovered in the first suit, as a bar to the second, to which plaintiff replied that the first suit was only for one week's salary under the contract. A demurrer to this replication was sustained, and judgment rendered for defendant; and plaintiff appealed. The court of appeals affirmed the judgment, holding that the contract was entire and indivisible and that, after its breach, but one action could be maintained on it.

*James* v. *Allen County*, 44 Ohio St. 226, is also directly in point. There plaintiff was employed as superintendent of the stone and brick work in the building of a courthouse, for such time as would be necessary to complete the building, at a salary of $100 a month, payable monthly. He was discharged before the building was completed, and sued for the wages which he claimed he should have been permitted to earn, from April 13 to June 13, 1882, and recovered judgment therefor. Later, he sued for wages which he could have earn-

ed from June 13 to August 13, 1882, and defendant pleaded the former recovery. A demurrer to this plea was overruled by the common pleas court, and judgment given for defendant. The judgment was affirmed on appeal, the court holding: "Where an employe, engaged under a contract for a specific time, the wages being payable in installments, is wrongfully discharged before the expiration of the period of hire, and all wages actually earned at the time of the discharge have been paid, an action will not lie to recover the future installments, as though actually earned, but the remedy is by action for damages arising from the breach of the contract, and one recovery upon such claim is a bar to a future action."

The decisions of the different states of the Union on the point are not harmonious, some of them still holding to the early English doctrine. But the great majority of the states, as well as the better considered cases, hold that, where an employe has been engaged to render services for a definite period, even though his salary is payable in installments, the contract is not divisible, and, if wrongfully discharged or prevented from entering upon the services by his employer, he can not recover on a count for salary claimed to be due for services not actually performed; nor can he maintain but one action for the breach of contract. The authorities following the doctrine of constructive service announced by Lord Ellenborough, as well as those that ignore it, some of them going so far as to expressly disapprove it, may be found collated in 13 Am. & Eng. Ann. Cases, pp. 112-115.

The peculiar doctrine of successive liability for loss of wages, as if upon a contract of continuing indemnity, announced by the Minnesota court in *McMullan* v. *Dickinson*, 60 Minn. 156, 51 Am. St. Rep. 511, to be the proper rule, where a servant has been wrongfully discharged, we do not find to be followed by any other court. Such a rule produces a multiplicity of suits for one and the same wrong, and tends to encourage idleness in the discharged servant. Although wrongfully discharged, a servant still owes a duty, both to himself and to society, to be diligent in trying to secure other employment. A recovery once had, whether it be upon a count

for damages for a breach of the contract or upon an indebitatus assumpsit count for services which could have been rendered, bars subsequent recovery. For the breach of an entire contract, the party aggrieved has a right to recover in the one action all damages, prospective as well as past. 2 Sedgwick, (9th ed.), Sec. 636g; *Thomas* v. *Willoughby*, 24 Grat. 521; *Lamoreaux* v. *Rolfe*, 36 N. H. 33; *Wilkinson* v. *Dunbar*, 149 N. C. 20; *Sutherland* v. *Wyer*, 67 Me. 64; *Litchenstein* v. *Brooks*, 75 Tex. 196; and *Monarch Cycle M'f'g. Co.* v. *Meuller*, 83 Ill. App. 359.

That the contract, in this case, was entire needs no discussion. Plaintiff's declaration alleges that she was employed for a period of nine months,—a school year.

Having declared on the special contract for wages which she claimed to be due thereunder, the performance of the services for which they were to be paid is put in issue by the general plea, and the agreed facts prove that plaintiff actually performed no services whatever, and, therefore, her suit must fail, unless her declaration may properly be regarded as a suit for damages for the breach of the contract for her employment. This question we need not determine, for the reason that, if it could be so regarded, her former recovery is a complete bar to the present action.

. . The judgment will be reversed; and, it being apparent from the agreed facts that plaintiff could not make out any better case, if a new trial should be awarded, judgment will be entered here for defendant.

### ON RE-HEARING.

After a careful reconsideration of this case and the authorities bearing thereon we are of opinion to adhere to our former conclusion. The authorities are not harmonious, but our decision harmonizes with the weight of the more modern and better reasoned cases from other states, and accords with what we regard as the better rule applicable to cases of this character. The contract was entire, the breach thereof also entire and plaintiff had but one right of action. She exhausted her remedy by her former suit and is barred of the present action by the judgment rendered therein.

*Reversed, and rendered.*

POFFENBARGER, JUDGE, *(dissenting):*

I am unable to concur in the conclusion adopted by a majority of the members of the court. In my opinion, the procedure to which they have committed themselves subordinates substantial right and justice to a bare technicality. If the ruling had any foundation in a statute, I would, of course, acknowledge its supremacy. But it is of judicial origin and its correctness has not been universally admitted. It has never been recognized in this state, and the decisions in other jurisdictions are only persuasive authority here. Whether the weight of authority favors it may well be doubted. Originally, all authority was against it. Since 1850, the trend has been in its favor, but it stands upon fallacious and unsound reasoning. That the wages for the whole term of nine months, less any sum the plaintiff might have· earned at similar employment, in the same community, within the same period, by the exercise of diligence, or did actually earn within that period, anywhere or in any way, could have been recovered in a single action, is conceded by all authorities. Such an action could have been brought immediately upon the refusal of the board to permit the plaintiff to teach, or at the expiration of the term contemplated by the contract. The additional right to sue for the installments, as of the dates at which they would have become due and payable, on the theory of constructive service, accepted in some jurisdictions, or separate and distinct breeches of the contract, as of the times at which the installments would have become due, giving a right of indemnity for each separate breach of such character, is accorded in some states and denied in others, the latter asserting the doctrine of a single and entire breach for which only one action can be maintained. ·

The constructive service theory advanced by Lord Ellenborough in *Gandell* v. *Potigny,* 4 Camp. 375, has been accepted and extensively applied in this country. *Marx.* v. *Miller,* 134 Ala. 347; *Moss* v. *Land Co.,* 93 Ala. 269; *Ramey* v. *Holcombe,* 21 Ala. 567; *Liddell* v. *Chidester,* 84 Ala. 508; *Gardenhire* v. *Smith,* 39 Ark. 280; *Champion* v. *Hartshorne,* 9 Conn. 564; *Hitchens* v. *School Dist.,* 62 Alt. 897; *Rogers* v. *Barham,* 8 Ga. 190; *Hichman* v. *Motor Car Co.,* 151 Mich. 214; *Isaaca*

v. *McAndrew,* 1 Mont. 437; *Madden* v. *Porterfield,* 53 N. C. 166; *Stewart* v. *Walker,* 14 Pa. St. 293; *King* v. *Steiren,* 44 Pa. St. 171; *Rye* v. *Stubbs,* 1 Hill L. (S. C.) 384; *Watts* v. *Todd,* 1 McNull. L. (S. C.) 26; *Congregation* v. *Peres,* 1 Coldw. (Tenn.) 620; *Jones* v. *Jones,* 2 Swan (Tenn.) 605; *Dunn* v. *Hereford,* 1 Wyo. 206; *McGuffin* v. *Coyley,* 2 U. C. L. B. 308. But it has been repudiated as unsound in the country of its origin. *Smith* v. *Hayward,* 7 Ad. & El. 544; *Goodman* v. *Pocock,* 15 Q. B. 576. Nevertheless, many of the American courts adhere to the doctrine of several and successive actions for breeches of contracts for services, containing covenants or promises to pay in installments, some saying constructive service is only a fiction set up as a means of working out just results, and others, that the doctrine of constructive service may consistently be rejected without abrogation of the rule allowing successive action for installments. The best exposition of the latter theory is found in *McMullan* v. *Dickinson Company,* 60 Minn. 156, 51 Am. St. 512.

As the character of the contract involved in that case affords better means of illustration of the operation of the two rules, than those usually found either in the decided cases or the course of business, it having been one for service throughout a long period of time, about thirty years, the facts upon which the decision rests are here briefly stated. The defendant, a corporation, by a written contract, employed the plaintiff as its general manager, at a salary of $1500.00 per year, payable in monthly instalments of $125.00, from and after the date of the contract, as long as he should own in his own name 50 shares of the capital stock of the corporation, fully paid up, and the business of the corporation should be continued, not exceeding the term of the existence of the corporation, the charter of which gave it right of life for thirty years. The contract was dated February 25, 1892. Having complied with all conditions and performed the service contemplated until October 23, 1893, the plaintiff had been then discharged and dismissed without cause. Having recovered, in one action, his salary to March 1, 1894, amounting to $512.00, he brought a second one for his salary for the months of March

and April, 1894, in bar of which the defendant plead the former recovery. A demurrer to this plea was sustained and the plea rejected. From the order ·thus holding the plea insufficient and rejecting it, an appeal was taken, on which the order was affirmed.

The gist of the decision, sustained by a well considered and logical opinion, is set forth in the syllabus of the case as follows: ''The liability of the master to the servant is not an absolute liability for wages for constructive service during the balance of the term, but a contingent liability of indemnity for loss of wages. This liability · accrues by installments on successive contingencies, each of which consists in the failure of the servant, without his fault, to earn, during an installment period, the amount of wages which he would have earned had the contract been performed, and the deficiency is the measure of damages. The original breach is not total, but the failures to pay the successive installments constitute successive breaches, and successive actions may be maintained for the recovery of the installments of damages as they accrue, if any. This is the rule of damages usually allowed under the fiction of constructive service, but that fiction is rejected as false and inconsistent with that rule, while the rule itself is retained.''

The opinion is a vigorous denial of the correctness of the theory of legal singleness and indivisibility of the breach of such a contract, effected by the refusal of the employer to allow performance by the employee, and demonstration of the fallaciousness of some of the argument given in support of the proposition. Such of it as exposes the contradiction inherent in the constructive service theory is approved, but its applicability to the allowance of successive actions for damages, on the theory of several and distinct breaches, is denied and refuted. Allowance thereof no more encourages idleness· on the part of the discharged employee than limitation to a single action; for, in neither case, is the servant required to present himself for work daily. In neither, does he seek recovery of wages, on the theory of either actual or constructive service. He goes for damages in each, founded upon the wrongful discharge only. In each, the measure of the damages

is the amount of wages or salary agreed to be paid, less what the plaintiff has actually earned or could have obtained in similar employment. In each, he must avail himself of any opportunity he may have to mitigate the damages by similar service, and the defendant carries the burden of proof of such opportunity. This alleged economic reason for entirety of breach and singleness of right of action, in such cases, suggested in *Howard* v. *Daly,* 61 N. Y. 362 and so strongly urged in *James* v. *Allen County,* 44 Ohio St. 226 and *Glass Co.* v. *Stoehr,* 54 Ohio St. 157, obviously has no application after the elimination of the theory of constructive service.

What remains of the argument is little more than an arbitrary declaration of the courts, that the discharge or renunciation of the contract can afford only one cause of action. Of course, public policy, as well as equitable considerations, forbids the splitting of actions. One controversy over a single matter suffices. Two or more work an unnecessary consumption of the time of the courts, intensify and prolong controversies, involve waste of the time and resources of the litigants and militate against social peace and harmony. But these considerations are manifestly subordinate to the contract rights of the citizen, and afford no justification for abatement thereof. Indivisibility of a single cause of action is wise and just and should be rigidly observed, but the classification of causes respecting singleness should be so made as to avoid infliction of hardship and oppression or production of absurd results. In the absence of legislation, the classification is a court function and a mere matter of procedure. In the exercise of this right, some courts have declared the cause of action arising upon a breach of such a contract as is involved here single, *Olmstead* v. *Bach and Myers,* 78 Md. 132; *Keedy* v. *Long,* 71 Md. 385; *Closeman* v. *Lacoste,* 28 Eng. L. & Eq. R. 140, while others assert the contrary. See the long list of cases first cited.

Injustice of the single action rule, in both the practical and legal senses of the term, is forcibly demonstrated by Canty, J. in *McMullan* v. *Dickinson Co.,* 60 Minn. 156, 158, in this language: ''By this charter the life of this corporation is thirty years. If the action is commenced immediately after the

breach how can prospective damages be assessed for this thirty years, or for even one year? To presume that the discharged servant will not be able for a large part of that time to obtain other employment, and award him large damages, might be grossly unjust to the defendant. Again the servant is entitled to actual indemnity, not to such speculative indemnity as must necessarily be given by awarding him prospective damages. His contract was not a speculative one and the law should not make it such.'' It is said entirety of the breach and cause of action is a logical sequence of entirety of the contract, but logic alone does not determine the character of laws. Primarily, it is formal rather than practical and often ignores the most vital elements of wise and just conduct. Conditions, more than theories, determine the form and operation of laws. That such a contract as this imposes more than one obligation upon the employer is obvious. One is to permit the service throughout the entire stipulated period, others to pay for the service at the end of each installment period. He may violate any of the latter without breaking the former and the servant may sue him as often as he breaks them. If the agreement were entire and indivisible, this would be an impossibility. In the absence of a provision for periodical payments, there could be no right of action for wages actually earned, until all the service contracted for should have been performed. *Ornstein* v. *Yahr,* 119 Wis. 429. So a contract providing for periodical payments is severable, while one stipulating for a single payment for the whole service is indivisible and entire in all respects. Though unlike and different in class, while in full operation, it is said such contracts are exactly alike when broken. That is a palpable *non sequitur.* What rule or principle of law confers upon the employer power to alter the form, force or effect of the contract, by his own act and that a wrongful one? To permit him to do so violates a maxim basic and fundamental in both law and equity. Both sternly and uniformly deny to any man the fruit or benefit of his own wrong. Imperious judicial declaration of likeness, impossible except for the effect accorded a wrongful act, is no justification of manifest departure from an all-prevading legal principle. In form and effect, the con-

tract, as made, in operation and without breach other than non-payment, is divisible. How does it become indivisible and entire in all respects? By the sole act of the employer? He may break it, but he alone can no more change its character than he alone could have made it. No such right in him is judicially recognized. The court itself endeavors to make the alteration, founding its action partly on his wrong, in violation of the maxim to which reference has been made.

Nor can he by his own act, destroy the contract. He can wrongfully terminate the relation of master and servant, but that is not the contract. It is only a thing stipulated or provided for by the contract. His wrong in doing so confers upon the injured party right of rescission or abrogation of the agreement, but, until he does rescind, it remains in force. If he sees fit to sue on it for his damages, he elects to keep it in force, not to destroy it, and, in doing that, he subjects himself to the burden, and extends to the defendant the benefit, of another invariable and fundamental principle of law and equity. He cannot accept or hold the benefit of it in any manner or degree without taking upon himself all of its burdens. He must give as well as take. He remains under all the obligations the contract imposes upon him and extends to the defendant all the benefits it confers upon the latter. He can no more partially continue the contract in force by an action on it or otherwise, than he can partially rescind it. If either party, after an opportunity to escape from the obligation of the contract, elects to stay within it for any purpose, he is in for all. For the proposition that the injured party has an absolute right to keep a contract fully alive, after renunciation thereof by the other party, there is authority of the highest character. In *Frost* v. *Knight*, L. R. Exch. 111, (1 Moak, 218) Cockburn Ch. J. said: ''The promisee, if he pleases, may treat the notice of intention,'' (not to perform the contract), ''as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences: but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party not only to

complete the contract, if so advised, notwithstanding his pre-
vious repudiation of it, but also to take advantage of any su-
pervening circumstances which would justify him in declining
to complete it.'' The doctrine is affirmed by an unbroken
line of authority. *Leigh* v. *Patterson,* 8 Taunt. 540; *Phill-
potts* v. *Evans,* 5 M. & W. 275; *Ripley* v. *McClure,* 4 Exch.
359; *Cort* v. *Ambergate,* 6 Eng. L. & Eq. 230; *Hochester* v.
*De La Tour,* 20 Eng. L. Eq. 157; *Kadish* v. *Young et al.,* 108
Ill. 170; *Roebling's Sons Co.* v. *Fence Co.,* 130 Ill. 660.

These decisions only define the right of the injured party,
in the case of notice to him of intention on the part of the
other, not to perform the contract, given before the time of
performance has arrived. The status of the contract, after
an action upon it for damages for the breach has been
brought, is not therein defined. But they emphatically give
the injured party the right of election and deny power in the
wrong-doer to abrogate or alter its obligation. If the contract
does not survive, how does it sustain an action? There is no
recission. The action is founded upon its terms, not upon an
implied promise to reimburse for money expended, materials
furnished or work done, under it, as in the case of rescission;
and its terms and provisions constitute the basis of ascertain-
ment of the damages. Neither the election to sue nor the ac-
tion itself abates anything from the contract. The declara-
tion affirms it and adheres to it. Only refusal or failure of
performance is complained of. The contract continues to
operate and bind the defendant, else he would not be bound.
It, not merely his wrongful act, is the foundation of the ac-
tion. If it were not, the cause of action would have to be
treated as having arisen *ex delicto,* from a mere tort. Con-
tinuance of the obligation through the action and beyond it
to the end of the term, is the basis of allowance of damages
and imposition of the reciprocal duty of mitigation, when the
action has been brought before arrival of the time for per-
formance or the end of the period of service contracted for.

In case of renunciation or default on the part of the em-
ployer, the employee has an universally acknowledged right
of election as to whether he will rescind, whether he will sue
on the contract, whether, in that event, he will sue immediate-

ly after the default, or await the time of performance or the expiration of the contract period. Being faultless, he may take any legal course he may choose to pursue. The contract has a main or principal obligation, but it has others of a minor character and severable. All are broken. It is entirely practicable to sue for a breach of the separable minor stipulation. Why should the courts bar that course? To shield the wrong doer from the costs and annoyance of several suits? He could have protected himself from that by omission of the minor stipulations from the contract, when he made it. Is it to save time to the courts? They are provided for the purpose of administering the law and awarding just and legal rights.

A severable contract is not a separate or independent one. To say a contract is severable necessarily implies union of its parts, but not an indissoluble union. Separate and independent contracts are wholly disconnected. Any complete contract, consisting of several parts, is, in some sense, entire, but many such contracts are severable, and they are severed or separated for remedial purposes, the very purpose for which severance here is denied. The severance is made to enable the courts to do justice between the parties. "The great weight of modern authority is to the effect, however, that a contract to do several things at several times is divisible in its nature because, although the agreement is in one sense entire, the performance is several, and an action will lie for the breach of any one of the stipulations, each of them being considered in respect to the remedy as a several contract." 23 Cyc. 444. Thus, Maryland, denying right of successive actions on a contract of employment, stipulating for periodical payments, holds several suits on the same bond for different breaches may be maintained and that a recovery for one default on it does not bar a second action on it for another breach. *Orendorff* v. *Orendorff*, 48 Md. 298. Likewise, Indiana holds: "Although a mortgagee, holding several notes secured by the same mortgage, which mature at different times, and one of which is due, may foreclose as to all, yet he may institute his suit to foreclose alone as to the note due; and if he do not prosecute but one such suit at the same term of Court, he shall recover costs in each successive foreclosure.

A judgment of foreclosure on one such note can not be pleaded as a bar to a subsequent suit on the same mortgage to enforce payment of another note, because said notes may properly be considered as so many successive mortgages, and successive, causes of action.'' *Crouse* v. *Holman,* 19 Ind. 31. In *Badger* v. *Titcomb,* 15 Pick. (Mass.) 409, the court held, after reviewing the English authorities, that ''A contract to do several things at several times is divisible in nature, and an action of assumpsit lies upon every default.'' Anciently, in England, no action was allowed on a contract for money payable in installments, until the last one became due. *Beckwith* v. *Nott,* Cro. Jac. 504; *Rudder* v. *Price,* 1 H. Bl. 547; *Siddall* v. *Rawcliffe,* 1 Cromp. & M. 487. Later the courts departed from the rule, held such contracts divisible and allowed assumpsit for installments. *Cooke* v. *Whorwood,* 2 Samed. 337; *Rudder* v. *Pierce,* 1 H. Bl. 547. As to when two actions for matters growing out of the same contract may be maintained, the authorities are not uniform. In *Hartley* v. *Harman,* 11 Ad. & Ell. 798, and *Goodwin* v. *Pocock,* 15 Q. B. 576, right to recover wages earned under a service contract, in an action for wrongful dismissal, was denied. In *Perry* v. *Dickerson,* 85 N. Y. 345, it was allowed. The right to do this was asserted in *Howard* v. *Daly,* 61 N. Y. 369, but the Maryland court, in *Keedy* v. *Long,* 71 Md. 385, denies it.

The constructive service theory of recovery was not rejected in England until 1850. Finding that theory contradictory and illogical, the court, in rejecting it, enunciated the extreme doctrine now in question, without any inquiry as to whether the contract was severable, and solely upon the fallacious suggestion of the economic reason to which reference has been made. In the mean time, the doctrine of the early English cases had been followed in most of the jurisdictions of this country. As has been shown, the reason for the English departure has no application to successive actions for damages and, for such purpose, the contract is divisible in nature. To deny the right of division to the party not in fault gives to the wrong-doer the benefit of his wrongful act. It allows him to introduce an enormous element of uncertainty into the estimate of the damages, one so great that

some courts decline to allow any beyond the date of the trial. *Gordon* v. *Brewster,* 7 Wis. 355; *Fowler* v. *Armour,* 24 Ala. 194. It is equally unjust to the defendant. Often the issue is whether there was any employment and the defendant, to test that question, must hazard everything on the issue. If he fails, he may be required to pay an enormous sum for nothing. An action for damages for an installment would enable him to test that question and, on losing, to tender the employment, and thus obtain the services in return for his money, or put an end to the damages. Refusal to perform a contract, under an erroneous impression as to its obligation, does not deny, to the party so refusing, the benefit of the contract. *Armstrong* v. *Ross,* 61 W. Va. 38; *Bannister* v. *Coal & Coke Co.,* 63 W. Va. 502. Why should a refusal, under a mistake as to whether one has been made at all, work such ruinous consequences as sometimes ensue from such action, in this class of cases? Ordinarily, such contracts are made for short periods of time, but they may be for long periods as in *McMullan* v. *Dickinson Co.*

Procedure ought not to be characterized by such technicalities as unnecessarily work hardship and injustice. This harsh rule so operates and, besides it is not well founded in precedent and has not been settled with due regard to fundamental principles or the results of its operation.

Judge MILLER joins in this dissent.