### RIEFKIN v. E. I. DU PONT DE NEMOURS & CO.

(Court of Appeals of District of Columbia. Submitted February 13, 1923. Decided June 4, 1923.)

#### No. 3869.

1. **Master and servant** &#8680;8(1)—**Promise of permanent employment held not terminable at will.**

A promise by a corporation to give plaintiff permanent employment with the corporation if he would resign his position with the government is not one which is terminable at the will of the corporation defendant, but means that so long as defendant continues in a position requiring plaintiff's services, and plaintiff performed loyal and satisfactory service, he could continue to be employed in the capacity specified.

2. **Master and servant** &#8680;3(1)—**Relinquishment of other position consideration for promise of permanent employment.**

The relinquishment by plaintiff of his government position in reliance on defendant's promise to give him permanent employment is sufficient consideration to bind defendant to its contract, though plaintiff was not bound to continue in defendant's service.

3. **Master and servant** &#8680;36—**Plaintiff need not tender return of amount paid and to which defendant admitted plaintiff was entitled.**

Plaintiff, in an action to recover for defendant's breach of contract to give him permanent employment, need not tender a return of the amount paid to him by defendant before the breach, which defendant in its answer admitted plaintiff was entitled to.

Appeal from the Supreme Court of the District of Columbia.

Action by Philip M. Riefkin against E. I. Du Pont De Nemours & Co., a corporation. Judgment for defendant, entered on a special verdict, and plaintiff appeals. Reversed and remanded, with directions to enter judgment for plaintiff.

&#8680;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank J. Hogan, of Washington, D. C., for appellant.

J. Harry Covington and Oscar Underwood, Jr., both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a judgment for the defendant in the Supreme Court of the District in an action to recover the reasonable value of services rendered the defendant in the purchase of coal from November 15, 1917, to March 31, 1919. In his particulars of demand plaintiff claimed $483,605 for the purchase of 3,210,050 tons of coal, and credited the defendant with $9,854.57 received "as advances on account and for expenses." The defendant pleaded the general issue and not indebted, and in its affidavit of defense averred, among other things:

"That on October 30, 1917, the plaintiff and the defendant entered into an agreement whereby the plaintiff was to be employed by the defendant from November 15, 1917, for an indefinite period, as an employee in connection with coal purchases made by the defendant, at a salary on the basis of $4,000 per year, with the further understanding that if, after six months, the plaintiff had proven his ability to perform his duties satisfactorily, there would be added to this salary a 20 per cent. bonus, such bonus to start six months after the plaintiff assumed his duties as an employee of the defendant; that the plaintiff commenced his duties as such employee of the defendant November 15, 1917, under said agreement, and continued to perform the same until March 31, 1919, when plaintiff's employment terminated because of the fact that his services were no longer required by the defendant, reasonable notice of such termination having been given to the plaintiff by the defendant by a letter dated on March 13, 1919, informing the plaintiff of such termination of his service, with the salary of the plaintiff to continue until May 15, 1919; * * * that all services performed by the plaintiff for the defendant between November 15, 1917, and March 31, 1919, were pursuant to the agreement hereinabove in this affidavit described; that the defendant paid the plaintiff in full for his services according to the terms of said agreement of employment the sum of $6,776.34, being $4,000 per year, from November 15, 1917, to March 31, 1919, plus 20 per cent. bonus on the same from March 31, 1919, the plaintiff not accepting the salary offered him by the defendant from April 1, 1919, to May 15, 1919; that in addition to payment in full for services, as aforesaid, the defendant paid the plaintiff in full for traveling expenses incurred in connection with said agreement of employment the sum of $2,105.35; and that the defendant is not indebted to the plaintiff in the amount claimed in the declaration and affidavit filed therewith in whole or any part thereof."

According to plaintiff's evidence, he was induced to enter into the agreement in question by the representations of the defendant to the effect that, if he would resign from a position he then held with the United States government and enter the employ of the defendant, to take charge of the purchase of coal, he would be given permanent employment in that capacity, so long as he rendered satisfactory service and was loyal to the defendant's interests. His evidence further tended to show that he rendered satisfactory service, was loyal to the interests of the defendant, and that he was discharged without cause.

The defendant introduced no testimony. Thereupon the case was submitted to the jury, under rule 52 of the court below, for a find-

ing of fact, subject to the view of the court as to the' law. The finding of the jury was as follows:

"The jury, upon their oath, say they find in favor of the plaintiff, that the money payable to him by the defendant is the sum of $67,500, with interest at the rate of 6 per cent. per annum, from the 13th day of December, 1920, if the court shall be of the opinion that he ought to recover against the defendant upon the facts submitted to us upon the trial, which facts were as follows: We find that prior to November 15, 1917, plaintiff and defendant entered into a contract of employment under which plaintiff was to take charge of the purchase of coal for delivery to and use by the defendant at a salary on the basis of $4,000 a year, and after six months a 20 per cent. bonus, making $4,800 a year; that the defendant agreed to give plaintiff permanent employment in that capacity so long as he rendered satisfactory services and was loyal to its interests, if plaintiff would resign from a position which he then held with the United States government and enter the employ of the defendant company; that pursuant to said agreement and relying upon it the plaintiff did resign from his government position, and on November 15, 1917, began the work for which he was employed, and continued to perform it until March 31, 1919; that he did render satisfactory services and was loyal to defendant; that between November 15, 1917, and March 31, 1919, plaintiff did in the course of his employment negotiate the purchase for and procured to be delivered to the defendant the number of tons of coal specified in plaintiff's declaration and bill of particulars; that the defendant accepted the services plaintiff rendered and the benefit thereof; that the defendant on March 31, 1919, discharged the plaintiff from its employment; that the plaintiff accepted and received the amounts which the defendant paid to him on account of salary and expenses because of his belief that his employment was on the basis aforesaid; that the plaintiff received on March 13, 1919, his notice of discharge from defendant's service, and afterwards, on April 1, 1919, was informed by Niles and Tallman, officers of the defendant, that the agent, Rankin, had no authority to make a contract with him for permanent employment; that later on the same day the plaintiff talked with Pierre S. Du Pont, defendant's' president, who told him that he would confer with Buckner and Tallman, vice presidents of the defendant company, and then establish his (the plaintiff's) relation with the Du Pont Company on the basis of the value of the services that he had rendered to the company; that he himself, the said Du Pont, would see that the matter was adjusted in full recognition of the services which plaintiff had rendered the company, and for him, the plaintiff, to let the matter stand as it was and do nothing until he heard from him, the said president, Du Pont; that plaintiff thereafter on April 17, 1919, sent a telegram to the said Pierre S. Du Pont reading as follows: 'May I see you Friday or Saturday your convenience Advise,' to which telegram plaintiff has never received any reply; that the plaintiff thereafter did, on April 25, send a telegram to the defendant requesting payment of his salary for the month of March, 1919, and the defendant in response sent a check for $430.66 to the plaintiff, informing him that it was his salary for March, 1919, and that the plaintiff received the said check and used it; that after the discharge of the plaintiff by the defendant, then on May 19, 1919, the plaintiff brought this suit against the defendant for the reasonable value of the services which he had rendered and defendant had accepted; that the usual and customary compensation paid, during the period in question, as commissions to persons who acted as coal-purchasing agents for consumers, in the absence of any contract expressly fixing compensation for such services, was 15 cents per ton of bituminous coal, and 20 cents per ton of anthracite coal; that the plaintiff received from the defendant during the period of his employment the sum of $9,854.57 on account of his services and the expenses connected with the rendition thereof."

The court, being of the view that, as matter of law, the plaintiff ought not to recover, awarded judgment upon the special verdict for the defendant.

The defendant does not contest the propriety of the court's action in taking a special verdict (see Carter v. McDermott, 29 App. D. C. 145, 10 L. R. A. [N. S.] 1103, 10 Ann. Cas. 601; McNamara v. Washington Terminal Co., 37 App. D. C. 398; Burke v. District of Columbia, 42 App. D. C. 438; Cooper v. Penn Bridge Co., 47 App. D. C. 467, L. R. A. 1918D, 1138), nor does defendant question the form of plaintiff's action (see Clark v. Manchester, 51 N. H. 594; Keedy v. Long, 71 Md. 385, 18 Atl. 704, 5 L. R. A. 759; Keedy v. Crane, 71 Md. 395, 18 Atl. 707; Mullaly v. Austin, 97 Mass. 30; Mooney v. York Iron Co., 82 Mich. 263, 46 N. W. 376; United Press Ass'n v. Nat. Newspaper Ass'n, 237 Fed. 547, 150 C. C. A. 429). The defendant, however, does contend, first, that the contract entered into between the parties "was an employment at will, terminable by either party at any time"; and, second, that plaintiff should have returned or tendered "the entire consideration prior to the commencement of his action."

[1] The circumstances surrounding the making of this contract largely control the interpretation to be given the words "permanent employment" as used therein, for it must be assumed that the parties, knowing those circumstances, contracted with reference to them. The plaintiff held a position with the United States government, and the defendant agreed that, if he would resign from that position and take charge of the purchase of coal for the defendant, he would be given "permanent employment in that capacity so long as he rendered satisfactory services and was loyal to its interests." Relying upon this agreement, plaintiff did resign and perform his part of the contract. May it be said that it was within the contemplation of either party that "permanent employment," as used in the contract, meant that the plaintiff, the day following his resignation from his position with the government and the assumption of his new duties, could have been summarily discharged without any liability on the part of the defendant? Such a result could not have been contemplated by either party. The more reasonable view is that the parties contemplated that, so long as the defendant continued in a business requiring the purchase of coal and the plaintiff performed loyal and satisfactory service, he would continue to be employed in the capacity specified in the contract. The defendant, having introduced no evidence, is not in a position to contend that plaintiff's discharge was for any other reason than stated in its affidavit of defense, namely, "because of the fact that his services were no longer required." In other words, the defendant simply concluded that it could get along without plaintiff's services, and therefore, exercising a right it assumed it possessed, discharged him. This, in the circumstances, it had no right to do.

Our conclusion is fully supported by the authorities. In Carnig v. Carr, 167 Mass. 544, 46 N. E. 117, 35 L. R. A. 512, 57 Am. St. Rep. 488, plaintiff was engaged in the business of an enameler, and entered into a contract with the defendant under which he agreed to give up his business and sell his stock in trade to the defendant. In consideration thereof, the defendant agreed to employ the plaintiff permanently as an enameler and engraver in the defendant's business. Plaintiff

gave up his business, sold his stock in trade to the defendant, entered the defendant's employ, and satisfactorily performed the work required of him. He was discharged and the main defense there, as here, was the indefinite character of the contract. The court held that, considering the circumstances surrounding the making of the contract, the words "permanent employment" meant that, so long as the defendant was engaged in enameling and had work which the plaintiff could and desired to do, and so long as the plaintiff was able to do the work satisfactorily, the defendant would employ him, "and that in that sense the employment would be permanent. * * * So construed, the contract would be capable of enforcement, and there would be no want of mutuality, because the plaintiff might not have bound himself to continue in the defendant's employment." As to the contention that it would be impossible to lay down a rule for estimating the damages, the court said:

"The difficulty is no greater than exists in many other cases, and does not present an insuperable objection to recovery."

In Pierce v. Tenn. Coal, Iron & R. R. Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591, where the plaintiff had been induced to compromise an action for damages for personal injuries by a promise on the part of the defendant company to employ him under certain named conditions, the court said:

"The fundamental question in this case is whether the contract in suit, made by the parties on June 4, 1890, is a contract intended to last during the plaintiff's life, or is a mere contract of hiring from month to month, terminable at the pleasure of either party at the end of any month."

The court found it to be of the former character, saying:

"An intention of the parties that, while the plaintiff absolutely released the defendant from that claim, the defendant might at its own will and pleasure cease to perform all the obligations which were the consideration of that release, finds no support in the terms of the contract, and is too unlikely to be presumed. Carnig v. Carr, 167 Mass. 544, 547."

See, also, Davidson v. Laughlin, 138 Cal. 320, 71 Pac. 345, 5 L. R. A. (N. S.) 579; Carter White Lead Co. v. Kinlin, 47 Neb. 409, 66 N. W. 536; McMullan v. Dickinson Co., 60 Minn. 156, 62 N. W. 120, 27 L. R. A. 409, 51 Am. St. Rep. 511; L. & N. R. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389.

[2] The suggestion that the rule in Carnig v. Carr is not applicable here, because the plaintiff in that case had relinquished a competitive business, is without force, for the reason that here plaintiff likewise made a surrender of something that well may have been of equal value to him, namely, his position with the government. See Townsley v. Sumrall, 2 Pet. 170, 182, 7 L. Ed. 386; U. S. v. Linn, 15 Pet. 290, 314, 10 L. Ed. 742.

[3] Coming to the question whether the plaintiff should have made a tender of the amount received by him prior to the bringing of his action, it will be noted that in its affidavit of defense defendant makes no contention that plaintiff was not entitled to the amount already received by him. On the contrary, it avers "that the defendant paid the plaintiff in full for his services according to the terms of said

agreement of employment"; the aggregate amount named being the amount which it now is contended should have been tendered back by him, and that the defendant was credited with in plaintiff's particulars of demand. In any view, therefore, plaintiff was at least entitled to the amount already received, and the tender of that amount would have been an idle ceremony. The basis of a tender back is a dispute as to the ownership of the amount tendered, but here there was no such dispute, and hence no occasion or necessity for a tender. See Gould v. Cayuga County Nat. Bank, 86 N. Y. 75; Clark v. Manchester, 51 N. H. 594. It must be assumed that in assessing damages the jury credited defendant with that amount, as did plaintiff in his particulars of demand.

All questions of fact having been settled, the court should have entered judgment for the plaintiff in the amount found by the jury. Carter v. McDermott, 29 App. D. C. 145, 10 L. R. A. (N. S.) 1103, 10 Ann. Cas. 601. Judgment reversed, and cause remanded, with directions to enter judgment for the plaintiff in that amount.

Reversed and remanded.