## LITTELL v. EVENING STAR NEWS-PAPER CO.

### No. 7648.

United States Court of Appeals for the District of Columbia.

April 21, 1941.

Arthur J. Hilland and DeWitt S. Hyde, both of Washington, D. C., for appellant.

Edmund L. Jones and James C. Rogers, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant applied for a position with appellee newspaper company and, after several conferences, was employed at a salary of $35 per week. This employment was temporary, for a period of four weeks, to give appellant an opportunity to see whether she could work out an advertising sales plan consisting of a marketing news advertising page. At the end of the four weeks appellant confessed that she had failed. Thereafter, she worked out some ideas for the improvement of the plan previously discussed and persuaded appellee to give her two weeks' additional temporary employment further to test the feasibility of the plan. At the end of the two weeks she had succeeded in selling the desired space; the new feature was adopted by the newspaper; and appellant was employed upon a "permanent" basis. She continued in the employ of appellee newspaper company for a number of years, during all of which time the advertising plan which she had worked out was continued in use by appellee and, in fact, became a very profitable feature of the company's Evening Star newspaper. Thereafter, appellant was discharged and paid four weeks' salary in advance.

This action was commenced in the lower court on the theory, set out in appellant's complaint, that she had entered into a contract with appellee calling for permanent

employment, and that such employment could not be terminated at the will of appellee, as was done in the present case. Two questions are presented on appeal: (1) What elements are necessary in order to constitute a contract of permanent employment? (2) Are the facts of the present case sufficient to prove that such a contract was made?

▮ The rule is that unless the parties reveal an intent to enter into a contract for permanent employment, it will be regarded as terminable.[1] Where the intent is not clearly revealed by the express terms of the agreement, the courts will look to evidence of surrounding circumstances to determine what was in the minds of the contracting parties.[2] Thus, when one who enters into a contract of employment, promises not only that he will give his services but also additional consideration—as, for example, by making an investment in the business,[3] by resigning from government service,[4] by giving up his own business,[5] or by relinquishing an acknowledged right to recover for injury which he has suffered[6]—such facts may be sufficient, in each case, to show the intent of the parties to enter into a contract for permanent employment.

▮ Some of the courts have reasoned from these cases that, to prove a contract of permanent employment, *two* considerations *must* be shown; that is, a consideration in addition to the services to be performed; and that in the absence of two considerations there can be no such contract.[7] This misconception results from mistaking the form for the substance. If it is their purpose, the parties may enter into a contract for permanent employment —not terminable except pursuant to its express terms—by stating clearly their intention to do so, even though no other consideration than services to be performed is expected by the employer or promised by the employee. The meaning of the cases previously referred to is that where no such intent is clearly expressed and, absent evidence which shows other consideration than a promise to render services, the assumption will be that—even though they speak in terms of "permanent" employment —the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party.

▮ A careful examination of the evidence in the present case fails to reveal anything more than such an ordinary business contract for an indefinite period, subject to the continuing satisfaction of both parties, and terminable by either upon reasonable notice. The most persuasive language in support of appellant's contention, which appears in the record, is the statement made by Mr. Newbold, the business manager of the Evening Star: "If you go out and sell this and make yourself a permanent position, you can have it as long as it is a success." At the same time it was

---

[1] Boatright v. Steinite Radio Corp., 10 Cir., 46 F.2d 385, 389; Campion v. Boston & Maine R. R., 269 Mass. 579, 582, 169 N.E. 499, 500; Edwards Co., Inc. v. Deihl, 160 Va. 587, 590, 169 S.E. 907, 908; 1 Williston, Contracts, Rev.Ed.1936, § 39; Note, 15 N.C.L. Rev. 276; 1 Labatt, Master and Servant, 2d Ed.1913, § 175.

[2] Riefkin v. E. I. Du Pont de Nemours & Co., 53 App.D.C. 311, 314, 290 F. 286, 289; Carnig v. Carr, 167 Mass. 544, 547, 46 N.E. 117, 118, 35 L.R.A. 512, 57 Am.St.Rep. 488; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 165, 235 P. 502, 506.

[3] McMullan v. Dickinson Co., 63 Minn. 405, 65 N.W. 661; Beck v. Walkers, 24 Pa.Co.Ct.R. 403.

[4] Riefkin v. E. I. Du Pont de Nemours & Co., 53 App.D.C. 311, 290 F. 286.

[5] Roxana Petroleum Co. v. Rice, 109 Okl. 161, 166, 235 P. 502, 507; Carnig v. Carr, 167 Mass. 544, 547, 46 N.E. 117, 118, 35 L.R.A. 512, 57 Am.St.Rep. 488.

Cf. Kirkley v. F. H. Roberts Co., 268 Mass. 246, 167 N.E. 289.

[6] Pierce v. Tennessee Coal, Iron & R. Co., 173 U.S. 1, 9, 10, 19 S.Ct. 335, 43 L.Ed. 591; F. S. Royster Guano Co. v. Hall, 4 Cir., 68 F.2d 533; Cox v. Baltimore & O. S. W. R. R., 180 Ind. 495, 103 N.E. 337, 50 L.R.A.,N.S., 453, and note; Louisville & N. R. R. v. Cox, 145 Ky. 667, 141 S.W. 389; Pennsylvania Co. v. Dolan, 6 Ind.App. 109, 32 N.E. 802, 51 Am.Rep. 289; Stevens v. Southern Ry. Co., 187 N.C. 528, 122 S. E. 295.

[7] Pitcher v. United Oil & Gas Syndicate, Inc., 174 La. 66, 139 So. 760; Rape v. Mobile & O. R. Co., 136 Miss. 38, 52, 53, 100 So. 585, 588, 35 A.L.R. 1422; Skagerberg v. Blandin Paper Co., 197 Minn. 291, 266 N.W. 872; Minter v. Tootle-Campbell Dry Goods Co., 187 Mo. App. 16, 27, 173 S.W. 4, 8. Cf. Arentz v. Morse Dry Dock & Repair Co., 249 N.Y. 439, 444, 164 N.E. 342, 344, 62 A. L.R. 231; Lynas v. Maxwell Farms, 279 Mich. 684, 273 N.W. 315.

clearly understood that if appellant failed to sell the necessary advertising space, during the four weeks' trial period, there would be no opening on the Star. The letter of authorization which was given to appellant contained no specification whatever concerning the term of employment. At the end of the four weeks' period she admitted her failure. Thereafter, appellant wrote a letter to Mr. Newbold in which she asked: "Would it be possible for you to give me a position in any of the departments on your paper." To this he replied regretfully, "there is no position that I could offer you." He suggested that she see Colonel Herron, the advertising manager of the Evening Star, concerning the possibility of "straight soliciting for new business." But Colonel Herron said "there was nothing." Thereafter, appellant revised the plan which she had previously failed to sell. At this point in the record her testimony reads as follows:

"* * * I took that down and showed it to the Colonel, and with that second appeal he gave me another try of two weeks, and Mr. Newbold consented to do that also, with the remark that he thought it was throwing good money after bad, but he would give me a second opportunity, and I took the second opportunity.

"Q. Now, what arrangements were made at that time with respect to what employment, if any, you should receive there if you succeeded in selling it?

"Mr. Jones: I would like to know what was said.

"By Mr. Hilland:

"Q. All right, go ahead. What was said? A. The same arrangement as in the first place, that if I went out and succeeded I would make for myself a permanent position, if I sold the page and made a success of it. There was no stipulation as to how I should make a success of it, or anything of the kind. I was to do that. The thing was that I was to get a permanent position as long as the page was sold and a success.

"Q. Now, did you succeed in selling the whole page during that additional period of two weeks? A. Yes, sir."

The page of advertising upon which appellant worked became very popular; there was a waiting list to get on the page; appellant's salary was raised from $35 a week to $55 a week. Thereafter, appellant was taken off this particular work and was put to work soliciting advertising "on the street." She asked several times to be restored to her work on the special page. After nine months she was discharged on the ground that she had not been "bringing in enough business." This charge, she testified, related to her soliciting, not to the special page.

Appellant's testimony is far from sufficient, under the law as previously stated, to prove an employment contract of greater permanence than for continuing employment terminable at will on reasonable notice. Her testimony on cross-examination reveals that the free-lance advertising business which she had conducted prior to her employment by appellee was not profitable; she was supporting three children; she was very anxious to get employment; she applied to Colonel Herron of the Star because she had worked for him twenty years before; she told him things were very serious with her although, at that time, she didn't want to let down her pride too much or let him see how desperate she was. On a later visit, however, she made clear to him that she was desperate, that she must have employment in order to feed her children. Whereupon Colonel Herron took her in to see Mr. Newbold. Then followed the conversations upon which she relies. The evidence shows beyond dispute that appellant was so far from being in a position to bargain for a contract of unusual character in the business world, that she revealed to appellee her desperate willingness to take any position which she could get upon the staff of appellee's paper. While her lack of bargaining power may be regrettable, it, together with the other surrounding circumstances, shows clearly that the minds of the two parties never met upon an agreement for employment, permanent in other than the ordinary sense. Consequently, the lower court properly directed a verdict in favor of appellee.

Affirmed.