Merle L. STAUTER, Appellee,

v.

WALNUT GROVE PRODUCTS, Division of W. R. Grace Co., Appellant.

No. 54356.

Supreme Court of Iowa.

June 17, 1971.

Neiman, Neiman, Stone & Spellman, Des Moines, and Shaw & Shaw, Pocahantas, for appellant.

Edward S. White, Carroll, and Gray & Gray, Rockwell City, for appellee Bruce M. Snell, Ida Grove, of counsel on the brief.

REES, Justice.

Defendant appeals from judgment entered on a jury verdict awarding $24,375 damages to plaintiff on plaintiff's suit for breach of an alleged oral lifetime contract of employment.

In 1962 plaintiff and two brothers organized a corporation for the purpose of engaging in the sale and distribution of farm fertilizer. They bought their product from an organization in Belmond, Iowa, and resold it to farmers in the area of their place of business in Fonda, Iowa. After the enterprise had been in operation for about two years, the plaintiff and his associates were approached by representatives of the defendant with an offer to purchase the business, which offer to purchase embraced and included an agreement on the part of the defendant to employ plaintiff as plant manager for an initial annual salary of $5,000 which was to be increased

eventually to $10,000 annually, the plaintiff contending his employment was to continue indefinitely as long "as he kept up on his job".

At the close of plaintiff's evidence, defendant moved for a directed verdict in its favor, which motion was overruled. After the verdict of the jury had been returned defendant moved for judgment notwithstanding the verdict, which in essence reasserted the grounds urged in support of the motion for directed verdict. Following the overruling of the motion for judgment notwithstanding verdict, defendant moved for a new trial, alleging the damages were excessive and unsupported by the evidence, and that the court committed certain errors in the conduct of the trial which are hereinafter referred to. The motion for new trial was overruled, and defendant appeals.

Generally, defendant asserts trial court erred: .

(1) In allowing plaintiff to amend his petition after the close of the evidence.

(2) In failing to sustain defendant's motions for directed verdict.

(3) In failing to sustain defendant's motion for judgment notwithstanding the verdict.

(4) In failing to sustain defendant's motion for a new trial.

(5) In failing to submit certain instructions requested by defendant.

Defendant specifically contends when an employment contract is subject to the employee competently performing and the employer in good faith becomes dissatisfied with employee's services and discharges him, the court cannot substitute its judgment for that of the employer.

Defendant also contends the agent for the defendant had no implied or express authority to enter into a lifetime employment contract with plaintiff, and further contends the alleged contract is unenforceable for lack of mutuality because one of the parties is not liable for non-performance and the contract is at most one for employment terminable at will by either party without incurring liability.

The defendant further asserts plaintiff failed to offer any proof of attempts on his part to find other employment and to mitigate his damages and that the amount of damages fixed by the jury is not sustained by the record evidence.

Finally defendant contends evidence of plaintiff in support of the alleged oral contract was inadmissible under the statute of frauds.

The business of the plaintiff and his associates was sold on March 1, 1964 for $5,200 and on the same date plaintiff began his employment with defendant as plant manager at the Fonda, Iowa, plant. Plaintiff's brother and sister were also employed at the Fonda plant. Plaintiff alleged as a part of the sale of the business there was an oral agreement to employ him at a starting salary of $5000, which would be increased to $10,000 per year as the business developed, with the arrangement to continue for as long as plaintiff desired to be employed and as long as he was competent and maintained satisfactory production levels. He was discharged from his employment on December 6, 1966.

■ I. We first consider the contention the trial court erred in permitting plaintiff to amend his petition, and in connection therewith take note of rule 88, Rules of Civil Procedure, which provides,

"The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense".

The allowance of such amendments to pleadings is largely in the discretion of the trial court. A. C. Nelsen Auto Sales v. Turner, 241 Iowa 927, 931, 44 N.W.2d 36, 38; Terpstra v. Schinkel, 235 Iowa 547,

552, 17 N.W.2d 106, 109. In the Terpstra case, *supra,* this court said,

"It is too well settled to admit of the citation of authorities that under the practice prevailing in this state, the allowance of amendments at almost any stage of a trial is the rule and the refusal of such privilege is the exception. * * * We think that Rule 88 of the Rules of Civil Procedure was so drawn as to perpetuate the authority of the trial court in the liberal allowance of amendments."

The record before us establishes plaintiff had originally pleaded the alleged contract was to continue "for as long as the said Merle L. Stauter desired to be thus employed and as long as he was able to competently perform the services which he undertook to do under said contract." The amendments permitted by the court at the close of plaintiff's evidence were,

(1st) "and as long as the production of the plant under his management was maintained at a satisfactory level", and

(2d) "that the said plaintiff desired to continue in his employment for the rest of his working life and that the damages which he claims in this action are based upon loss of income resulting from his improper discharge."

Defendant contends the effect of the amendments is to make a jury question out of a proposition that should properly have been the subject of a directed verdict in defendant's favor. It argues the issue as to whether plaintiff "competently performed" is not a jury question, but that the addition of the "satisfactory production level" amendment narrowed the issue from a non-jury question to one of fact for the jury.

Defendant contends the effect of the amendment was to create a jury question where one did not previously exist. We shall discuss this contention further in Division II *infra.*

We are unable to perceive how the amendments substantially changed the plaintiff's claim. In the initial petition plaintiff claimed right to employment for so long as he competently performed the services which he undertook as manager of the plant. The addition of the factor of maintenance of satisfactory levels of production does not amplify the original claim. Indeed, it would appear to us the maintenance of production levels would be inherent as one of the several services plaintiff alleged he promised to perform.

Having in mind the liberal construction given to rule 88, R.C.P., we find the trial court did not abuse its discretion in permitting the amendment to the plaintiff's claim.

II. In support of its contention the case was improperly submitted to the jury, defendant asserts the trial court erred in submitting a determination of the validity of the employer's discharge of the plaintiff, and argues when an employment contract is subject to the employee performing competently, and the employer in good faith discharges him, the court cannot substitute its own judgment of the standard of performance for the employer's judgment.

The oral contract contended for by plaintiff embraced the understanding that "plaintiff was to be employed as long as he was able to *competently* perform the services." (Italics supplied). The amendment merely pleaded the employment was to continue as long as production was maintained at a satisfactory level, which, it seems to us, would necessitate competent performance of services.

Assuming the terms of the contract are as the plaintiff alleges, the competence of the performance of his managerial duties was a key factor in judging performance. This is not a contract under the terms of which the employee serves only to the satisfaction of the employer. In Starkweather v. Emerson Manufacturing Co., 132 Iowa 266, 272, 109 N.W. 719, 722, a

case involving a written employment contract, the court said,

"The instructions quoted were also wrong in submitting the question to the jury as to whether or not plaintiff's services were in fact unsatisfactory. A jury may have inferred from this that it was to determine the character of the service as to being satisfactory or otherwise. If defendant was in good faith dissatisfied that was sufficient, although its dissatisfaction may have been unreasonable".

The foregoing statement from the Starkweather case is what the defendant argues before us here. However, it appears there has been a distinction made between cases involving termination of employment for reasons of incompetency, and those involving discharge because of employer dissatisfaction. See 53 Am.Jur.2d, Master and Servant, § 51, pp. 126–127. And, in 56 C.J.S. Master and Servant § 54(b), p. 462, we find,

"Where the contract provides that the employer can terminate the employment if not satisfied with the services rendered, the question whether or not the services were satisfactorily performed is a question to be determined by the employer and not by the jury. However, the question whether the asserted dissatisfaction as a ground for discharge is in good faith or feigned is for the jury where there is evidence tending to show that the discharge was due to reasons other than dissatisfaction."

See also LaFontaine v. Developers and Builders, Inc., 261 Iowa 1177, 156 N.W.2d 651, and annotation 49 A.L.R. 472.

■ Where the grounds for discharge are alleged to be the *incompetence* of the employee, and the evidence is in conflict, the question of the competency of the employee is one of fact to be determined by the jury. Brown v. Chris Nelsen & Son, Inc., 10 Mich.App. 95, 158 N.W.2d 818, 820. See Ogden v. George F. Alger Co., 353

Mich. 402, 91 N.W.2d 288, 290; Moore v. Chicago, Burlington & Quincy Ry. Co., 65 Iowa 505, 22 N.W. 650, involved a written contract under the terms of which defendant railroad agreed to employ plaintiff steadily as a baggage and expressman, a contract of employment being in settlement of a claim by plaintiff against defendant for personal injury suffered while in defendant's employ. The railroad contended plaintiff was not competent to perform his duties while the evidence showed plaintiff contended he was able, and the court specifically held, 65 Iowa at 509, 22 N.W. at 652, "As the question of plaintiff's fitness for the position was to be determined from these, it was clearly the province of the jury to determine it."

■ Thus, in the matter before us, defendant's contention the question of plaintiff's competence is not one for the jury and was improperly submitted to it, is not applicable. The court properly submitted the issue of competency for the determination of the jury.

Defendant cites Kramer v. Philadelphia Leather Goods Corp., 364 Pa. 531, 73 A.2d 385, as support for the proposition the standard of satisfaction with services rests within the good faith judgment of the employer, and is therefore not a jury question. However, in the Kramer case the court held there was sufficient evidence to create a jury question as to the good faith of defendant's expressions of dissatisfaction with plaintiff's work. In the matter before us, we are dealing with an allegation that plaintiff Stauter was incompetent, and the contention does not rest on the subjective assertion of defendant's dissatisfaction. The pronouncement of the Pennsylvania court in the Kramer case is not applicable to the issue before us here.

III. As supportive of its contention the court erred in overruling its motion to direct a verdict, defendant contends its agent had no authority express or implied to enter into or bind defendant with a lifetime employment contract.

As a general rule it is established a general manager of a business with power to employ is not presumed to have authority to make contracts for lifetime employment. Chesapeake & Potomac Telephone Co. of Baltimore City v. Murray, 198 Md. 526, 84 A.2d 870, 28 A.L.R.2d 920, 924; Lewis v. Minnesota Mutual Life Insurance Co., 240 Iowa 1249, 1268–1269, 37 N.W.2d 316, 327, and cases therein cited; Annotations 28 A.L.R.2d 929; Eggers v. Armour & Co. of Delaware (8th Cir., 1942) 129 F.2d 729, 732; General Paint Corp. et al. v. Kramer (10th Cir., 1932), 57 F.2d 698.

However, in cases where the lifetime employment contract is part of or incidental to the settlement of a claim for damages against the employer, the above rule as to lack of implied authority to contract does not apply. Eggers v. Armour & Co., *supra*, 129 F.2d at 732; F. S. Royster Guano Co. v. Hall, 68 F.2d 533, 536 (4th Cir.); Langendorf United Bakeries, Inc. v. Moore, 327 F.2d 592, 595 (9th Cir., 1964); see Farmer v. Arabian American Oil Co., 277 F.2d 46, 52 (2nd Cir., 1960); see Lee v. Jenkins Bros., 268 F.2d 357, 370–371 (2nd Cir., 1959); and see General Paint Corp. et al. v. Kramer, *supra*.

The facts in the matter before us surrounding the action of defendant's agent, Mesdag, and his negotiations for the purchase of plaintiff's fertilizer business, are important in resolving the implied authority question. Mesdag was an employee of W. R. Grace Co. and had previously been with Ris-Van Company, a fertilizer concern, and had engaged in business transactions with the plaintiff on prior occasions. Plaintiff testified Mesdag approached him about selling his business, representing to him defendant W. R. Grace wanted to set up satellite fertilizer plants in the area, including one at Fonda. Mesdag offered to buy out plaintiff's operation with an announced special purpose of purchasing plaintiff's stainless steel equipment, and offered plaintiff $5,200 for the equipment and in addition, told plaintiff if he would go with W. R. Grace, he would be employed as plant manager, his brother would be employed as a salesman, and his sister as a bookkeeper. Plaintiff's starting salary was to be at the level of $5000 per year and was to be increased up to $10,000 per year. One Schroeder, also an employee of W. R. Grace, was present and participated in the negotiations.

Plaintiff testified he decided to sell under the terms held out to him and the business was transferred to Nitrogen Products Division of W. R. Grace Co. Plaintiff began working for W. R. Grace as plant manager on March 1, 1964 at the agreed salary of $5000 per year, or $225 every two weeks. The record discloses extensive testimony by plaintiff and his brother concerning the negotiations with Mesdag and the eventual sale of the business to W. R. Grace.

The only evidence as to the authority of Mesdag insofar as the defendant is concerned, is a reference by one Hoover, director of production of W. R. Grace, on cross-examination, to the effect that he was advised that W. R. Grace, through one of its sub-divisions, had acquired the Stauter Fertilizer Corporation for $5200. Other than this reference, there is no evidence at all as to the authority or lack of authority of Mesdag from the standpoint of the defendant. In its pleadings, defendant denied its agent had authority to enter into such a contract as that contended for by plaintiff.

In Instruction #6 the jury was instructed by the court that it was necessary for the plaintiff to establish by a preponderance of the evidence the contract was entered into in behalf of the corporation by its authorized representatives. The evidence indicates Mesdag had authority from the corporation to negotiate the sale or purchase of Stauter Fertilizer Company. As a part of the sale transaction, defendant included promises of employment for plaintiff, his brother and sister. The alleged contract between plaintiff and defendant is obviously more than a simple employment contract terminable at will by either party. Promise of long term or lifetime employ-

ment is not unusual as additional good consideration for the sale of a business to a competitor, and must have been a factor in plaintiff's decision to sell. See Carnig v. Carr, 167 Mass. 544, 46 N.E. 117.

In the Royster Guano Co. case, *supra*, which involves a lifetime employment contract made with an employee as settlement for a potential tort claim against employer, the court stated on the issue of the authority of a corporate agent to bind his employer to a lifetime employment contract,

" * * * the courts have held that the circumstance that an agent has been given apparent authority to manage or represent the principal's business in a particular locality or section of the country, may be taken into consideration in determining whether it is reasonable for one dealing with the agent to assume that he has power to make settlement or to rescind or modify contracts."

We note in this regard the record shows Mesdag approached plaintiff with an offer to buy because defendant was interested in setting up satellite fertilizer operations in the area. From this a jury could find the defendant sent out its agents with authority to make the necessary contracts in order to build the satellite facilities, and the fact defendant has accepted the benefits of the purchase of plaintiff's business is a factor to be considered in indicating some authority to the agent to bind the corporation. See F. S. Royster Guano Co., *supra*, 68 F.2d at 537; Lewis v. Minnesota Mutual Life Ins. Co., *supra*, 240 Iowa at 1271, 37 N.W.2d at 328. It is of course understood that the scope of authority of an agent is to be determined by the trier of fact.

■ We find plaintiff has met his burden of proof to show by a preponderance of evidence the authority of defendant's agent, and there is sufficient evidence in the record to overcome defendant's motion for directed verdict. This is especially true because the employment contract involved

in this case is not isolated but is part of the general sale of a competitive business.

IV. In support of its contention the court erred in not directing a verdict for defendant, defendant contends the contract is unenforceable for lack of mutuality, and was one terminable at will by either party without incurring liability.

On the issue of lack of mutuality, this court has said, "If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality in and of itself does not render a contract invalid. * * * Though consideration is essential to the validity of a contract, it is not essential that such consideration consists of a mutual promise." Hanson v. Central Show Printing Co., 256 Iowa 1221, 1224, 130 N.W.2d 654, 656.

Therefore, the issue as to lack of mutuality is really subordinate to the primary consideration of whether the alleged contract is merely one terminable at will, or whether there was sufficient additional consideration to make it a binding, lifetime employment contract.

■ Absent any consideration beyond the employee's promise to perform, a contract for permanent or lifetime employment is construed to be for an indefinite time, terminable at the will of either party. Lewis v. Minnesota Mutual Life Insurance Co., 240 Iowa 1249, 1259, 37 N.W.2d 316, 322–324; Hanson v. Central Show Printing Co., *supra*, 256 Iowa 1221, 1224, 130 N.W. 2d 654, 657; Faulkner v. Des Moines Drug Co., 117 Iowa 120, 122, 90 N.W. 585, 586; and, see annotation 135 A.L.R. 646.

■ However, a different situation arises where there is consideration in addition to the promise to perform services. Where the employee furnishes consideration in addition to his services, a contract for permanent or lifetime employment is valid and enforceable and continues to operate as long as the employer remains in business and has work for the employee once the employee performs competently. Carnig v. Carr, *su-*

*pra*; Kirkley v. F. H. Roberts Co., 268 Mass. 246, 167 N.E. 289, 290; Thompson v. Miller, 251 Iowa 324, 327, 100 N.W.2d 410, 412; Littell v. Evening Star Newspaper Co., 73 App.D.C. 409, 120 F.2d 36, 37, and see Eggers v. Armour & Co. of Delaware, 129 F.2d 729, *supra*; and Lewis v. Minnesota Mutual Life Insurance Co., *supra*, and cases cited therein; Mt. Pleasant Coal Co. v. Watts, 91 Ind.App. 501, 151 N.E. 7, 11.

In Eggers v. Armour & Co., *supra*, the additional consideration was release of a tort claim against the employer. In Carnig v. Carr, *supra*, plaintiff gave up his business as an enameler, and went to work with defendant at the same occupation with the agreement for permanent employment. In Riefkin v. E. I. DuPont de Nemours & Co., 53 App.D.C. 311, 290 F. 286, plaintiff agreed to give up a job with the government in exchange for other employment, and this was held sufficient additional consideration.

■ In the case at bar, the alleged oral employment contract was incidental to the agreement for the sale of plaintiff's property to defendant W. R. Grace & Company. It is obvious this is not a case where the employee simply promises to perform services without additional consideration involved. In Thompson v. Miller, *supra*, this court held plaintiff had more involved than a mere promise to perform services; that plaintiff had paid half of advertising and sales cost, and his traveling expenses, and we there held plaintiff had a capital as well as a labor investment. See Thompson v. Miller, 251 Iowa at 327, 100 N.W.2d at 412.

In the matter before us, plaintiff gave up a competitive business to defendant, and as a part of the agreement to sell the business and its equipment, an oral agreement to employ plaintiff under the terms indicated in Division I was entered into. Thus the permanent employment contract had additional consideration to make it valid and enforceable, and not terminable at will.

V. Defendant next contends damages fixed by the jury were not supported by the evidence, and that plaintiff failed to offer any proof of attempts on his part to find other employment, or to otherwise mitigate damages. In instruction #8 the jury was told the measure of damages for loss of income is the fair and reasonable value of the income lost by plaintiff by reason of the loss of his employment. The court also instructed on plaintiff's duty to mitigate the damages by seeking other employment.

The record indicates plaintiff was discharged on December 6, 1966. Plaintiff was educated to the level of the eighth grade, had been engaged in farming and the fertilizer business. He collected unemployment payments until he could begin farming in the spring of 1967. His earnings from the farm operation were in evidence for the jury's consideration.

Section 619.7, Code, 1971, provides,

"In any action brought to recover damages for an injury to person, character, or property, the defendant may set forth, in a distinct division of his answer, any facts, of which evidence is legally admissible, to mitigate or otherwise reduce the damages, whether a complete defense or justification be pleaded or not, he may give in evidence the mitigating circumstances whether he proves the defense or justification or not."

■ The defendant who pleads no mitigating circumstances in a contract action is limited in claiming plaintiff's duty to mitigate damages to circumstances shown or growing out of plaintiff's evidence. Section 619.8, Code, 1971; DeWaay v. Muhr (Iowa), 160 N.W.2d 454, 457. The burden is on defendant to prove plaintiff failed to minimize his damages. Shewry v. Heuer, 255 Iowa 147, 154, 121 N.W.2d 529, 533; Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 122, 143 N.W.2d 312, 317–318.

Defendant here did not specially plead mitigation of damages. Indeed, it claimed the plaintiff's alleged failure to prove he searched for employment in order to mini-

mize or mitigate was fatal to plaintiff's case. Plaintiff's evidence showed factors which would support a jury's conclusion he did all that was reasonable to find other employment in order to mitigate damages. Plaintiff knew the fertilizer business and farming, neither of which is an occupation where the demand for employment is great in the winter months, the period during which he was unemployed. We, therefore, conclude defendant's contention as to lack of showing to mitigate is without merit.

 With regard to defendant's contention the jury's award is not sustained by the evidence, we note that on appeal this court has repeatedly held the allowance of damages is primarily for the jury and we will not interfere therewith unless it clearly appears the verdict is unconscionable, the result of passion and prejudice, or not warranted by the evidence. Townsend v. Mid-America Pipeline Co. (Iowa), 168 N.W.2d 30, 33, and citations therein. The jury had before it evidence the alleged oral contract called for an initial yearly salary of $5,000, to be increased to a level of $10,000 per year. Plaintiff began his employment with defendant on March 1, 1964 at the agreed salary of $5,000, and was discharged December 6, 1966. The jury also had before it evidence defendant's plant at Fonda had closed at the time of trial but that defendant was still using up in its sales program liquid ammonia at the plant. Defendant had closed other plants and was in effect out of the fertilizer business at the time this case was tried in early February, 1970. From such evidence, plus plaintiff's financial records introduced at the trial, we find nothing in defendant's contention the verdict was not based on sufficient evidence to support it. The verdict of $24,375 was reasonable under the facts disclosed by the record.

VI. As a final ground to support its motion for direction of verdict, defendant contends evidence of the alleged oral contract is inadmissible because of the application of the statute of frauds.

Section 622.32, Code, 1971, provides,

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

* * *

"(4) those that are not to be performed within one year from the making thereof."

 We have held in a number of cases the statute of frauds is a rule of evidence and not of substantive law, and relates to the manner of proof but does not forbid oral contracts or render them invalid. Huston v. Gelane Co., Inc., 254 Iowa 752, 755, 119 N.W.2d 188, 190; Davis v. Davis (Iowa), 156 N.W.2d 870, 877.

Blair Town Lot & Land Co. v. Walker, 39 Iowa 406, is a leading case having to do with oral agreements not to be performed within one year from the making thereof. In Blair this court said, at p. 412,

"It is not sufficient to bring a case within the statute, that the parties did not contemplate the performance within a year; that there must be a negation of the right to perform it within the year. * * * It is not sufficient to bring it within the statute, that the parties manifestly intended to occupy more than a year in its performance, or that it is difficult to so perform or improbable that it can be performed within that time, so long as the right to perform it within the year remains, and it is possible to do so."

The rule set out above applies to employment contracts for "an indefinite term", or a "permanent" duration, or "for life". 2 Corbin on Contracts, § 446, pp. 549–550. Thus in the type of contract before us, the death of plaintiff within one year of the making of the contract, while improbable, nevertheless admits of the possibility of performance within one year. Another improbable yet possible occurrence that could mean performance would be that defendant

could go out of business within a year of making of the oral employment contract. Carnig v. Carr, *supra*, 167 Mass. 544, 46 N.E. 117, 118.

Defendant cites cases annotated in 28 A.L.R.2d 878, 880, for support for the proposition that where there is a contract for personal service, an agreement that the employment shall continue as long as the employee is able to work or satisfactorily performs, is insufficient to take the contract out of the statute of frauds requiring contracts not to be performed within a year to be in writing. However, all of the cases collected in that annotation to support defendant's contention, involve cases where there was no independent consideration in addition to the employee's promise to perform moving to the employer at the time of the making of the contract. Also, there was no provision in the contract for any contingency which would render the contract performable within one year without departure from the intent of the parties.

The annotation at 28 A.L.R.2d 881–882 goes on to say that where there is an oral contract for personal service based on additional consideration independent of the promise to perform, such contract is not within the statute of frauds. The theory underlying such pronouncement is obviously that within such a contract there is created a contingency by which performance may be terminated within a year. See Carnig v. Carr, *supra*.

Such a contract involving independent consideration is what we have in the case before us, as we held in Division IV. Therefore we hold the oral agreement between plaintiff and defendant was not within the statute of frauds and evidence introduced to prove its terms was admissible.

VII. Defendant alleges error in the trial court's refusal to give requested instructions with regard to good faith discharge of an employee, based upon defendant's theory of the case, viz: that the contract involved was actually a contract for employment at will. The trial court refused to submit the requested instructions on the basis they were either substantially covered by the final draft instructions or were improper under the evidence and the pleadings. The issues raised by the denial of the requested instructions have been dealt with supra in this opinion. There was no error by the trial court in refusing to give defendant's requested instructions.

Finding no reversible error in the record, this case is affirmed.

Affirmed.

All Justices concur, except REYNOLD-SON, J., who takes no part.