Sandra L. RINCK, Appellant,

v.

ASSOCIATION OF RESERVE CITY BANKERS, Appellee.

No. 94–CV–1013.

District of Columbia Court of Appeals.

Argued Oct. 3, 1995.
Decided May 16, 1996.

---

John E. Vargo, Washington, DC, for appellant.

Mary E. Pivec, Washington, DC, with whom Michael K. Wyatt was on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Sandra L. Rinck appeals the granting of a motion for summary judgment in favor of the Association of Reserve City Bankers

("ARCB"). The Superior Court ruled that an employment contract did not exist between Ms. Rinck and ARCB, and therefore the termination of Ms. Rinck's employment was not a breach of contract by ARCB. We conclude that genuine issues as to material fact preclude summary judgment, and therefore we reverse.

## I.

In reviewing the grant of summary judgment against Ms. Rinck, we view the facts in the light most favorable to her. The Association of Bank Holding Companies ("ABHC") hired Ms. Rinck to be its Administrative Vice President in 1988. In January of 1993 ABHC agreed to merge with ARCB. The parties to the merger agreed that ARCB would be the surviving partner of the merger, and would assume the responsibilities, liabilities and obligations of ABHC. The merger agreement also established that Dr. Anthony T. Cluff, then Executive Director of ARCB, would become the Executive Director of the merged corporations. Thomas L. Ashley, then president of ABHC, would no longer serve the surviving corporation. At least two newspaper articles discussed the merger, and both included comments attributed to Dr. Cluff which indicated that, aside from the departure of Mr. Ashley, no staff cuts were expected.

Dr. Cluff and Ms. Rinck met to discuss administrative and staffing issues on February 1, 1993. During the meeting, Ms. Rinck referred to the newspaper articles and asked whether they were accurate in stating that there would be no terminations other than Mr. Ashley's in connection with the merger. Dr. Cluff responded that the articles were accurate and that neither she nor any other staff member would be terminated as a result of the merger. While Dr. Cluff did not specifically describe Ms. Rinck's new position or responsibilities with the surviving corporation, he led her to believe that her salary and benefits would not be reduced. As a result of this conversation, Ms. Rinck did not seek alternative employment and assisted in the accomplishment of the merger.

On May 24, 1993, the Acting President of ABHC, John S. Rippey, informed Ms. Rinck that her employment was being terminated effective immediately. The reason he gave for her termination was that there would not be room for her in the merged organization. No other employees were terminated, nor were their salaries or benefits reduced, as a result of the merger. There is evidence to support Ms. Rinck's allegation that Dr. Cluff was responsible for the decision to terminate her. The associations formally approved the merger on May 28, 1993, and it became effective June 30, 1993.

Ms. Rinck filed a complaint against ARCB in the Superior Court alleging breach of contract and seeking reinstatement, compensatory damages, punitive damages, attorney's fees, and costs. ARCB responded with a motion to dismiss and a motion to strike and dismiss. The court denied these motions on the basis of the papers, without explanation.

During the discovery period the case was reassigned to another judge. Several months after the denial of its initial motions, ARCB filed a motion for summary judgment. ARCB argued that the alleged agreement between Ms. Rinck and Dr. Cluff was unenforceable against ARCB because: (1) it lacked the material terms necessary to form a valid employment contract; (2) there was no "new" consideration given by Ms. Rinck to change her status as an at-will employee; (3) the alleged contract violated the statute of frauds; and (4) it was ABHC rather than ARCB that terminated Ms. Rinck's employment and therefore ARCB could not be held liable. In the alternative, ARCB also moved for partial summary judgment, alleging that the remedies of punitive damages, attorney's fees, and reinstatement were not available to Ms. Rinck.

The Superior Court entered an order granting ARCB's motion for summary judgment, and explaining its reasons for doing so. It began by concluding that the law of the case doctrine did not apply, as Ms. Rinck asserted, because the original judge denied ARCB's motion to dismiss summarily, without explanation, soon after the moving papers had been filed. The court went on to find that the contract alleged by Ms. Rinck was unenforceable: "[p]laintiff's assertions

that in some way a unilateral contract was created when Mr. [Cluff] made an 'offer of employment' to an already at-will employee, who had to do nothing more than accept to create a binding enforceable agreement, is a specious argument which is wholly without merit." The court also found that the corporations had not officially merged at the time of Ms. Rinck's termination, and that no evidence had been presented to show that ABHC had relinquished authority to terminate at-will employees. Finally, the court granted ARCB's motion for summary judgment as to punitive damages and attorney's fees.[1] Ms. Rinck noted a timely appeal.

## II.

After restating the standard of review we follow in considering an appeal from the trial court's grant of a motion for summary judgment, we will discuss the principal issues raised in this appeal in the following order: first, whether an enforceable employment contract existed between Ms. Rinck and ARCB and, second, whether ARCB can ultimately be held responsible for Ms. Rinck's termination.[2]

*Standard of Review*

In a recent *en banc* case, this court laid out the standard of review for the granting of a summary judgment motion:

In order to be entitled to summary judgment, [the moving party] must demonstrate that there is no genuine issue of material fact and that [it is] entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Clyburn v. 1411 K Street Limited Partnership*, 628 A.2d 1015, 1017 (D.C.1993). The record is viewed in the light most favorable to the party opposing the motion. *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C.1991). On appeal, we must assess the record independently, but

the substantive standard applied is the same as that utilized by the trial court. *Northbrook Ins. Co., v. United Servs. Auto Ass'n*, 626 A.2d 915, 917 (D.C.1993).

*Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994).

*Existence of Employment Contract*

Ms. Rinck contends that her termination amounted to a breach of her employment contract. This court has held:

[t]here is a presumption that a hiring not accompanied by an expression of a specific term of duration creates an employment relationship terminable at will by either party at any time. This presumption can be rebutted by evidence that the parties intended the employment to be for a fixed period, or subject to specific preconditions before termination.

*Nickens v. Labor Agency of Metro. Washington*, 600 A.2d 813, 816 (D.C.1991) (citations omitted). In certain situations, promises of job security can rebut the presumption of at-will employment, but only where the parties have "state[d] clearly their intention" to make such an agreement. *Littell v. Evening Star Newspaper Co.*, 73 App. D.C. 409, 410, 120 F.2d 36, 37 (1941). We first consider whether the oral statements made to Ms. Rinck were sufficiently clear to rebut the presumption and, concluding that they were, go on to examine whether there was adequate consideration to make this agreement enforceable.

1. *Sufficiency of the Oral Promise*

The trial court concluded that even if Ms. Rinck's account regarding the making of a promise to her was true, it was insufficient to form a binding contract. Ms. Rinck admitted that Dr. Cluff did not mention a specific job title, duties, responsibilities, term, benefits or wage. However, she avers that

---

1. On appeal Ms. Rinck has not challenged the trial court's grant of partial summary judgment on the issues of punitive damages and attorney's fees, and therefore we leave the trial court's ruling undisturbed. The trial court made no ruling on ARCB's motion as it related to reinstatement, and thus the matter of reinstatement remains open on remand.

2. Ms. Rinck also raises the argument that under the doctrine of law of the case, the Superior Court judge who granted the motion for summary judgment was precluded from doing so because the motion to dismiss that had been denied by the first judge was substantially similar to the motion for summary judgment. We need not reach this issue, however, as we are reversing the order granting summary judgment on other grounds.

Dr. Cluff did promise her that she would not be terminated, and that her salary and benefits would not be reduced, as a result of the merger.

The trial court found that "[n]o employment contract can exist which is wholly devoid of any agreement as to material terms," citing *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 547 (D.C.1981). *LaVay*, however, can readily be distinguished from the case at bar: *LaVay* involved the issue of whether a sales commission contract had been formed between a sales agent and certain developers. 431 A.2d at 545–46. A contract was never formed because the parties could not agree on the material terms. *Id.* at 546. Here the conversation between Ms. Rinck and Dr. Cluff established at the very least that Ms. Rinck would continue her employment, salary and benefits, even though her duties may not have remained exactly the same. Therefore, the conversation between Dr. Cluff and Ms. Rinck involved the continuation of her existing employment and there was no reason for them to deal with the material terms that would remain the same.

It has been required in this jurisdiction, however, that the parties clearly state their intention to alter an at-will employment agreement in order to make such an alteration effective. *Littell, supra,* 73 App. D.C. at 410, 120 F.2d at 37; *see also Minihan v. American Pharmaceutical Ass'n,* 259 U.S.App. D.C. 10, 11–12, 812 F.2d 726, 728 (1987). This court has held that a personnel manual that states specific preconditions that must be met before employment will be terminated is sufficiently clear to rebut the presumption of at-will employment. *Washington Welfare Ass'n v. Wheeler,* 496 A.2d 613, 616 (D.C.1985). This court has also held, however, that a personnel manual which makes general references to "permanent employees" and discusses reasons the management can terminate such employees is too ambiguous to rebut the presumption. *Per-*

*kins v. District Gov't Employees Fed. Credit Union,* 653 A.2d 842, 843 (D.C.1995).

■ We conclude that a statement that an employee will not be terminated for a specific stated reason is analogous to the establishment of preconditions for termination described in *Washington Welfare, supra.* Therefore, Dr. Cluff's alleged statement that Ms. Rinck would not be terminated as a result of the merger was sufficiently clear and unambiguous.[3] It remains, of course, a jury question whether the statement was made.

### 2. *Consideration*

■ Generally, consideration is necessary to make a promise enforceable. According to the RESTATEMENT OF CONTRACTS:

> (1) To constitute consideration, a performance or a return promise must be bargained for.
>
> (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

RESTATEMENT (SECOND) OF CONTRACTS, § 71 (1981). More than one promise can usually be supported by a single consideration:

> There is consideration for a set of promises if what is bargained for and given in exchange would have been consideration for each promise in the set if exchanged for that promise alone.

*Id.* § 80(1). Therefore, if a promise of job security is made at the time the parties first enter into the employment contract, the consideration of the employee's services is undoubtedly sufficient to support the various obligations the employer undertakes, including the job security provision:

> If it is their purpose, the parties may enter into a contract for permanent employment—not terminable except pursuant to its express terms—by stating clearly their

---

**3.** ARCB also argues that the asserted contract is not enforceable because it was oral and therefore violates the statute of frauds. This court, however, has held that if an agreement is "capable, possible, or susceptible of performance within one year, the statute of frauds does not apply and

an oral agreement may suffice." *Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C.1985). Since the employment agreement at issue was capable of being performed within a year, it is not deficient under the statute of frauds.

intention to do so, even though no other consideration than services to be performed is expected by the employer or promised by the employee.

*Littell, supra,* 73 App. D.C. at 410, 120 F.2d at 37.

█ It is a different situation, however, when an additional promise is made after contractual duties have been undertaken. In general:

> [t]he parties to a contract are free to modify that contract by mutual consent. In order to be valid, however, the modification must possess the same elements of consideration as necessary for normal contract formation.

*Hershon v. Hellman Co.,* 565 A.2d 282, 283 (D.C.1989) (citations omitted). The case before us presents the issue of whether additional consideration beyond the continuation of services is required when a promise of job security is made *after* the commencement of employment.

Some jurisdictions have held that when an employer unilaterally promulgates personnel policies, for example through an employee handbook, they become binding even if the employees do not provide additional consideration beyond the continuation of their services.[4] We need not decide in this case whether consideration beyond continued employment is required when an employer issues employee handbooks to those who have previously commenced employment.[5] The precise issue before us is whether a statement regarding job security made by an employer to an individual employee who is already working can become binding even if the employee gives no "new" consideration in addition to merely continuing the employment.

█ We hold that additional consideration beyond continued employment per se is required to make such a promise enforceable. We are not disposed to encroach on this jurisdiction's long-established presumption of at-will employment by undermining the consideration requirement in this situation.

That conclusion, however, does not resolve this case. We must deal with its particular circumstances. The context in which Dr. Cluff made the alleged promise of job security to Ms. Rinck is significant—a merger was being worked out. Typically mergers involve the consolidation of operations and they often require staff reductions. Ms. Rinck was justifiably concerned about her future with the surviving association, especially because she had worked directly for the head of the association that would not survive, and that person would not remain with the merged association. Therefore, Ms. Rinck might understandably have inquired about her job security.[6]

█ Under the circumstances, a finder of fact could reasonably conclude that Ms.

4. *See, e.g., Panto v. Moore Business Forms, Inc.,* 130 N.H. 730, 547 A.2d 260, 265–68 (1988) (employer's unilaterally promulgated policy statement dealing with employee benefits was binding where employees continued performance of their duties); *Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452, 454–55 (1987) (job security provision in personnel handbook distributed after the commencement of employment was binding on the employer); *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985) (same); *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 625–27 (Minn.1983) (same). *But see Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1040–41 (6th Cir.1992) (under Ohio law mere continuation of employment and forbearance from seeking other employment was not additional consideration necessary to support oral promises of job security made during the course of employment); *Gates v. Life of Montana Ins. Co.,* 196 Mont. 178, 638 P.2d 1063, 1066 (1982) (employee handbook distributed after the employee commenced employment did not become contractually binding); *Schoen v. Consumers United Group, Inc.,* 670 F.Supp. 367, 378 (D.D.C. 1986) (personnel guidelines which did not exist at the employee's hiring did not become binding when adopted by employer).

5. Special factors are present in general personnel policy situations such as those involving employee handbooks. An employer, for example, may reasonably expect to benefit from better morale and a generally more cooperative attitude on the part of its entire workforce as a result of the promulgation of such a handbook. Moreover, enforcement of a handbook's provisions does not depend upon resolution of a fact issue created by an employee's recollection of a verbal exchange concerning such matters as the employer's right to terminate.

6. The performance of the promise that completes the unilateral contract is in many factual settings very similar to the action in reasonable reliance that figures in promissory estoppel analysis.

Rinck gave the associations the benefit of her continued services and her assistance in bringing about the merger because of Dr. Cluff's promise, and that she would not have conferred that benefit if he had not made the promise. A finder of fact could also infer that Dr. Cluff, in making the promise, sought to have Ms. Rinck remain on at that time. Therefore, even though Ms. Rinck's merely staying in her job would not normally, in the absence of such a circumstance, amount to consideration that would make binding an employer's statement concerning termination policy, if the jury should find that Dr. Cluff in fact made a promise of the nature alleged and that it was because of that promise that Ms. Rinck decided to forego seeking out other employment but instead to remain with the merging associations, her performance would constitute sufficient consideration to create a binding unilateral contract.

### ARCB's Liability for Breach of Contract

The final issue is whether ARCB can be held liable for breaching Dr. Cluff's alleged promise. ARCB argues that Ms. Rinck's employment was terminated by ABHC, and since the corporations had not yet merged, it cannot be held liable for the termination. Ms. Rinck, however, presents evidence that Dr. Cluff had the ultimate responsibility for the termination. For example, in an answer to an interrogatory ARCB stated that Mr. Rippey, the Acting President of ABHC, advised Dr. Cluff that he had decided to terminate Ms. Rinck if Dr. Cluff did not object, and that he did not object. A prior chairman of ABHC and member of the team that negotiated the merger also testified in his deposition that commencing at the time the merger agreement was reached, Dr. Cluff had responsibility for the staffing of the future merged association. There is additional evidence in support of Ms. Rinck's contention that ARCB is liable to her pursuant to her contract of employment, but the foregoing is sufficient to resolve the question before us. We conclude that enough evidence has been presented to create a genuine issue of material fact as to whether ARCB, acting through Dr. Cluff, was ultimately responsible for Ms. Rinck's termination. Therefore, we must reverse the trial court's grant of summary judgment in favor of ARCB, and remand the case for further proceedings.

*It is so ordered.*